NOTICE

Decision filed 03/12/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 140385

NO. 5-14-0385

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 10-CF-374 |
| | ) | |
| JESSE WALLACE, | ) | Honorable |
| | ) | Mark W. Stedelin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Moore and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Jesse Wallace, appeals the second-stage dismissal of his postconviction petition, which raised a claim of ineffective assistance of plea counsel. The court advanced the petition to the second stage, expressly finding that it was not frivolous or patently without merit. Postconviction counsel did not amend the defendant's petition because he did not believe that there were any amendments he could make to present meritorious arguments. The State filed a motion to dismiss, arguing that the defendant's claims were forfeited because they could have been raised in his direct appeal. At a hearing on the State's motion, counsel argued that the defendant's claims could not have been raised on appeal and, therefore, the claims were not forfeited. The court found that the claims were forfeited and dismissed the petition. In this appeal, the defendant argues that (1) postconviction counsel did not provide reasonable

1

assistance because he failed to amend the defendant's petition to allow it to survive the State's forfeiture argument, (2) postconviction counsel was obliged to file a motion to withdraw setting forth the reasons he believed the defendant's petition was without merit, and (3) the defendant is entitled to a credit of $5 per day against his fine for time spent in custody prior to sentencing. The State urges us to affirm the order dismissing his petition either on the basis that the claims are barred by *res judicata* or on the basis that they are affirmatively rebutted by the record. We reverse the order dismissing the petition, and we remand with directions, including directions to amend the mittimus to reflect the $5-per-day credit.

¶ 2    This is the third time this matter has been before this court on appeal. The case has a complicated procedural history and involves a complex plea agreement. We will therefore set out the procedural history in some detail.

¶ 3    On December 29, 2010, the defendant was charged with two counts of unlawful delivery of less than one gram of a substance containing cocaine within 1000 feet of a place of worship (720 ILCS 570/401(d), 407(b)(2) (West 2010)). The charges stemmed from two controlled buys between the defendant and a confidential informant, which were video-recorded. At the time the charges were filed, an additional drug charge was pending against the defendant in a separate case, and apparently federal prosecutors were also considering indicting him on drug charges. Attorney Tim Huyett, who was already representing the defendant in the other state case, was appointed to represent the defendant in this case as well.

¶ 4    The matter was set for a preliminary hearing on January 25, 2011. The day before the hearing, Huyett informed the defendant that when he reviewed the video recordings of the controlled buys, he learned that the confidential informant was also his client. Huyett explained

2

to the defendant that this created a conflict of interest that required him to withdraw as counsel. Huyett withdrew, and attorney Bill Milner was appointed to represent the defendant.

¶ 5    Milner appeared with the defendant at the preliminary hearing the following day. Although Huyett had withdrawn as counsel, he was also present. Milner informed the court that the defendant was waiving his right to a preliminary hearing. He indicated that at that time, the defendant intended to plead not guilty and demand a jury trial. However, he told the court that the parties were discussing a possible plea agreement, which could be resolved later that day. Milner explained that he needed time to discuss the matter further with prosecutors, but he stated that it was "of very urgent necessity" that the plea be entered that day because otherwise "the offer may expire." The court expressed reservations, emphasizing that it was important that the defendant not feel rushed in deciding whether to accept the plea agreement. The state's attorney explained that the possible agreement involved "an agreement by another prosecutorial agency" and that she could not "guarantee that they will make that agreement on a later date."

¶ 6    The court took a recess. During the recess, the defendant discussed the plea agreement with both Milner and Huyett. When the court convened again after the recess, the court stated for the record, "I have been advised by the State as well as Mr. Milner and Mr. Huyett that this— there was some reference even earlier today *** regarding some other prosecutorial entity being involved. When I inquired about that, I was told it was the federal authorities ***, and I'm sure as part of this plea agreement there is going to be some representation regarding what may or may not happen with respect to federal court ***." The court then turned its attention to the defendant's plea.

¶ 7    After the defendant indicated that he wished to plead guilty, the court inquired, "And you've had enough time to discuss this with Mr. Milner even though he was only appointed

3

yesterday?" The defendant responded, "Yes, ma'am." The state's attorney then described the plea agreement as follows. The defendant would plead guilty to one of the two charges. In exchange for his plea, the State would drop the second charge in this case and the charge involved in the other pending case. In addition, the State would recommend a sentence of 15 years and a mandatory $2000 drug assessment fine. She explained further, "We have been informed that if Mr. Wallace enters this plea on today's date to this amount, the federal government will not bring charges against Mr. Wallace arising from this or similar conduct." She went on to explain that the State agreed to vacate the defendant's plea and nol-pros the charges if the federal prosecutors went ahead and brought charges.

¶ 8    The court accepted the plea agreement. The state's attorney then presented the factual basis for the defendant's plea, and the court admonished the defendant. The court entered a judgment of conviction on the defendant's plea, sentencing him in accordance with the plea agreement.

¶ 9    On February 17, 2011, the defendant filed a *pro se* motion to withdraw his guilty plea. He alleged that his first attorney, Tim Huyett, was representing both the defendant and the confidential informant at the same time. He argued that Huyett must have known about this conflict before he disclosed it to the defendant because the confidential source was visible in the video recordings of the controlled buys. The defendant further alleged that he felt "threatened" and "misled" by Huyett, who told him "that the FBI was looking into [his] case" and that he must plead guilty to the state charge to avoid a 20-year federal sentence. The defendant alleged that he felt rushed to plead guilty, he did not have the opportunity to see the video recordings before the hearing, and he only discussed the plea agreement with Milner for 30 minutes before

4

pleading guilty. Finally, he alleged that Huyett did not use the material provided by the State in discovery to "create any defense at all."

¶ 10    The court appointed attorney Thomas Gatheman to represent the defendant on his motion. On July 28, 2011, Gatheman filed an amended motion to withdraw the defendant's guilty plea. He argued that the defendant's plea was not knowing and voluntary because (1) the defendant did not have sufficient time to consult with his attorney about the plea agreement or the evidence against him and (2) he entered into the plea due to a misapprehension of fact. Gatheman argued that although the defendant was not mistaken as to any specific fact when he pled guilty, he was operating under "a complete absence of knowledge of the facts."

¶ 11    The court held a hearing on the defendant's motion on August 19, 2011. The defendant testified at the hearing that he did not discuss the plea agreement with Huyett prior to the hearing at which he pled guilty. He acknowledged that he met with Huyett at least once between the time the charges were filed in this case and the date of the hearing. He explained, however, that they only discussed the other case pending against the defendant. He further testified that neither Huyett nor Milner ever discussed with him what evidence the State had against him in this case. Asked what Milner told him on the day of the plea hearing, the defendant replied, "Just told me what my plea agreements were." The defendant explained that Milner told him that he was being offered 15 years and that he would be charged federally if he did not plead guilty.

¶ 12    The defendant further testified that he believed Milner relied on Huyett in deciding how to handle the case. He noted that Huyett discussed the plea deal with the defendant and Milner even though he had withdrawn due to a conflict.

¶ 13    Asked why he accepted the plea agreement under these circumstances, the defendant testified that Milner told him, "Either I took the 15 years or by Friday or the State was going to

5

allow the feds to take my case and I was going to be offered 20 years to life." Gatheman asked the defendant why he told the court at the plea hearing that he had enough time to consider the plea agreement and was satisfied with the representation of both plea attorneys when he was now asserting that he felt otherwise. The defendant responded, "I just felt like that was all the options I had right then and there. They told me it was a one-day offer."

¶ 14    Gatheman argued that for a plea to be voluntary, it must be made knowingly. He argued that the defendant's plea was not made knowingly because he did not know what evidence the State had against him. The state's attorney argued that the defendant did not allege that he was given any misrepresentations of fact or law. He acknowledged that the defendant was required to make a choice concerning the plea agreement in an "admittedly somewhat unique situation." He argued, however, that the State could not control what federal prosecutors did, and it was accurate to tell the defendant that federal prosecutors would indict him that week unless he pled guilty to state charges and received a sentence of at least 15 years. Finally, the State pointed out that the court "repeatedly admonished" the defendant regarding the concerns he was raising in his motion to vacate his plea.

¶ 15    The court announced its ruling from the bench. The court noted that "the burden [was] on the defendant to show a reason to withdraw the plea of guilty." The court found that the defendant failed to meet this burden in two ways. First, the court noted that the defendant failed to make any allegations concerning what the evidence was or what defense he might have raised had Huyett or Milner discussed it with him. Second, the court explained, "As far as what did or didn't happen with respect to the attorneys that he had, either Mr. Huyett or Mr. Milner," neither attorney was subpoenaed to testify. The court also noted that at the plea hearing, the court urged

6

the defendant to wait to plead so he would not feel rushed in his decision. The court therefore denied the defendant's motion to withdraw his plea.

¶ 16    The defendant filed his first appeal in this matter on August 20, 2011. In that appeal, he argued only that the trial court erred in failing to comply strictly with the requirements of section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2010)). That statute requires the sentencing court to consider a presentence investigation report (PSI) before sentencing a criminal defendant for a felony conviction in most cases. However, the statute provides that the court may sentence the defendant without ordering a PSI if (1) the parties agree to a specific sentence and (2) the court makes findings concerning the defendant's criminal history, including any sentences previously imposed. *Id.* Compliance with these requirements is mandatory and is not subject to waiver. *People v. Youngbey*, 82 Ill. 2d 556, 564 (1980). In this case, the parties agreed to a specific sentence and counsel listed the defendant's prior convictions for the record during the plea hearing; however, the court did not make the required findings. The State conceded that these proceedings did not comport with the statutory requirements. We agreed, and we vacated the defendant's sentence and remanded the matter to the trial court for a new sentencing hearing that met the requirements of the statute. *People v. Wallace*, No. 5-11-0360, ¶¶ 1, 9 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 17    On remand, the court held another sentencing hearing. The court again accepted the plea agreement and sentenced the defendant according to its terms. The court again admonished the defendant that if he wanted to appeal, he would first have to file a motion to withdraw his plea. The defendant filed another direct appeal, but this time he did not first file a motion to withdraw his plea. We dismissed the defendant's appeal, finding that the defendant's failure to file a motion to withdraw his plea precluded us from considering the merits of his appeal. *People v.*

7

*Wallace*, No. 5-12-0484 (Sept. 19, 2013) (unpublished dispositional order) (citing *People v. Flowers*, 208 Ill. 2d 291, 301 (2003)).

¶ 18    On September 9, 2013, the defendant filed a *pro se* postconviction petition. He alleged that his plea was "insufficient" under Illinois Supreme Court Rule 402 (eff. July 1, 2012) because questioning by the court did not reveal whether he actually understood the nature of the rights he was waiving or the consequences of doing so. He further alleged that the court failed to comply with section 5-3-1 of the Unified Code of Corrections, "which is mandatory and not subject to waiver." Finally, he alleged that he was "in fact *threatened* by counsel," who told him that if he did not accept the plea agreement, "his charges would be turned over to the federal authorities." (Emphasis in original.) The defendant argued that his "plea was so insufficient and so inadequate that the appellate court had to remand the cause following an appeal. Yet the irregularity and errors in the plea were not and could not have been corrected." Although the defendant did not explicitly argue that he received ineffective assistance of counsel, his petition included a section titled "Constitutional and Statutory Provisions Involved," in which he stated that the sixth amendment guarantees the right to the effective assistance of counsel.

¶ 19    On October 30, 2013, the court entered an order expressly finding that the defendant's *pro se* petition was not frivolous or patently without merit. The court appointed attorney Matthew Chancey to represent the defendant. However, Chancey was not informed of his appointment until November 25. At a status hearing the following day, Chancey asked for a continuance to allow him time to confer with the defendant about possible amendments to the *pro se* petition. The court granted his request.

¶ 20    At the next status hearing, Chancey asked for a second continuance. He told the court that he reviewed a letter he had received from the defendant, the *pro se* petition, the transcripts from

8

the plea hearings, and this court's decisions in both of the defendant's direct appeals. Chancey then stated, "to be honest with you, Judge, having read those, I don't know what he's raising— trying to raise in his post-conviction petition. The one issue he raises in his *pro se* post-conviction petition that I could make head or tail of was raised in his first appeal where he was successful." Chancey noted that, as such, the issue was moot. He asked for an additional 30-day continuance to try to determine what other issues the defendant wanted raised.

¶ 21    The matter was continued two more times because the defendant did not immediately respond to Chancey's letter. At an April 15, 2014, status hearing, Chancey described for the court the efforts he had made to confer with the defendant to ascertain the claims he wanted raised. Chancey noted that he initially sent the defendant a letter in January but received no response from the defendant. He told the court that he then sent the defendant a second letter after a status hearing in February. This time he received a letter from the defendant in response. In the letter, the defendant raised additional issues but apparently did not clarify the issues he included in his *pro se* petition. Chancey told the court, "I still don't see that there's any merit to the issues he wants to raise. So I will not be filing an amended post-conviction petition."

¶ 22    On May 13, 2014, the State filed a motion to dismiss. The State did not address the merits of the defendant's petition. Instead, the State argued that the issues raised in the *pro se* petition were forfeited. The State argued that all of the defendant's claims involved matters that appeared in the record. As such, the State contended, the claims could have been raised in the defendant's first direct appeal. The State argued that the claims were therefore forfeited and/or barred by *res judicata*.

¶ 23    On June 24, the court held a hearing on the State's motion. The state's attorney first noted that the defendant's petition "appears to be arguing" that the court did not comply with Rule 402

9

at his plea hearing. She then stated, "I suppose he makes a second allegation that [he] was in fact threatened by counsel." The state's attorney argued that both of these issues could have been raised in the defendant's motion to withdraw his plea and in his direct appeal. Because the claims were not raised, she argued, they were forfeited for postconviction review. (We note that the ineffective assistance claim was raised in the defendant's *pro se* motion to withdraw his plea but was not raised either in the amended motion prepared by Gatheman or in the defendant's first direct appeal. The Rule 402 claim was not raised at all in earlier proceedings.)

¶ 24 Chancey argued that neither claim was forfeited. He argued that appellate counsel could not raise the issue of the plea court's compliance with Rule 402 because it was not raised in the defendant's motion to withdraw his plea. (We note that Chancey did not argue that Gatheman was ineffective for failing to raise this claim in his amended motion.) Because it could not be raised on appeal, Chancey argued, the issue was not forfeited. He also argued that the claim concerning the advice of plea counsel and counsel's alleged threat to the defendant could not have been raised earlier because it involved conversations between the defendant and plea counsel, which did not appear in the record. The court asked both parties if they had any authority to cite to support their arguments. Both stated that they did not.

¶ 25 The court took the matter under advisement and issued a written decision on July 11, 2014. The court noted that at the second stage of postconviction proceedings, it must take all well-pled facts as true unless they are contradicted by the record. The court then framed the issue before it as follows: "The issue raised by the Motion to Dismiss then is not whether the allegations are true; it is whether the issues presented by the pending Post-Conviction Petition could have been raised at the time of the initial appeal." The court noted that because the issue was forfeiture, rather than *res judicata*, it did not need to determine whether the appellate court

10

in fact considered any of the issues raised. The court then explained that the trial court record included the admonitions given to the defendant at his plea hearing, and the defendant's claim of ineffective assistance of plea counsel was considered at the hearing on his motion to withdraw his plea. The court concluded that both issues could have been raised on direct appeal and found them to be forfeited as a result. The court therefore granted the State's motion to dismiss. This appeal followed.

¶ 26     The defendant first argues that he did not receive reasonable assistance of postconviction counsel, the level of assistance that is guaranteed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)). He argues that Chancey's failure to amend his petition to avoid forfeiture fell below this level of representation. We agree.

¶ 27     The Post-Conviction Hearing Act provides a three-step procedure for adjudicating claims that a criminal defendant's conviction or sentence was the result of a violation of rights protected under the state or federal constitution. *People v. York*, 2016 IL App (5th) 130579, ¶ 15. At the first stage of postconviction proceedings, the court reviews the petition independently and determines whether the petition is frivolous or patently without merit. *Id.* If the petition clears that hurdle, it advances to the second stage, at which point the defendant has the right to counsel. *Id.* Counsel may file an amended petition, and the State may file a motion to dismiss or an answer. *Id.* ¶ 16. If the petition makes a substantial showing of a constitutional violation, it will be advanced to the third stage, which ordinarily involves an evidentiary hearing on the defendant's claims. *Id.*

¶ 28     This case involves a petition dismissed at the second stage. Although, as we just noted, the petition must make a substantial showing of a constitutional violation in order to proceed to

the third stage, the petition here was dismissed on the basis of forfeiture. Thus, the court did not consider whether the petition met this standard.

¶ 29    The Post-Conviction Hearing Act provides the right to counsel at the second and third stages of the proceedings. 725 ILCS 5/122-4 (West 2012). Because the source of this right to counsel is statutory rather than constitutional, the level of assistance guaranteed is not the same as the level of assistance constitutionally mandated at trial or on direct appeal. *People v. Greer*, 212 Ill. 2d 192, 203-04 (2004). Our supreme court has held that the level of assistance guaranteed by the Post-Conviction Hearing Act is reasonable assistance. *Id.* at 204.

¶ 30    To provide the reasonable level of assistance guaranteed by statute, postconviction counsel must perform the three duties set forth in Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Specifically, counsel must (1) consult with the defendant to determine the claims the defendant wants to raise, (2) examine the trial court record, and (3) make any amendments to the petition that are necessary in order to adequately present the defendant's claims to the court. *Greer*, 212 Ill. 2d at 205 (citing Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)). This does not mean postconviction counsel must file an amended petition in every case. Rather, counsel must make only those amendments that are *necessary* to adequately present the defendant's claims. *People v. Turner*, 187 Ill. 2d 406, 412 (1999). Thus, counsel might choose to stand on the defendant's *pro se* petition if it adequately sets forth the defendant's claims. Also, as our supreme court has held, it is not "necessary" to amend the defendant's petition to advance claims that lack merit, and counsel is under no obligation to do so. See *Greer*, 212 Ill. 2d at 205. However, as our supreme court emphasized in *Turner*, Rule 651(c) "plainly requires" that postconviction counsel make any amendments that are necessary. *Turner*, 187 Ill. 2d at 412.

¶ 31    If postconviction counsel files a certificate of compliance with Rule 651(c), this "creates a rebuttable presumption that postconviction counsel has provided the reasonable assistance contemplated by the [Post-Conviction Hearing] Act." *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 36. Where counsel does *not* file a certificate of compliance, however, this presumption does not apply. Instead, we may find that counsel fulfilled his duties and provided reasonable assistance only if there is " 'an explicit showing in the record that he did, in fact, fulfill the rule's requirements.' " *People v. Jennings*, 345 Ill. App. 3d 265, 271 (2003) (quoting *People v. Carter*, 223 Ill. App. 3d 957, 962 (1992)). We review *de novo* the question of whether counsel provided the reasonable level of assistance required. *People v. Russell*, 2016 IL App (3d) 140386, ¶ 10.

¶ 32    In this case, postconviction counsel Matthew Chancey did not file a certificate of compliance with Rule 651, as the State acknowledges. The defendant argues that the record does not explicitly show that he complied with all of the rule's requirements. We agree.

¶ 33    The record shows that Chancey consulted with the defendant to attempt to ascertain the contentions of error the defendant wanted him to raise. Chancey asked for several continuances to allow him to confer with the defendant. He sent multiple letters to the defendant, attempting to learn what issues the defendant wanted him to raise, although he apparently had some difficulty in obtaining clear answers from the defendant. However, we do not believe the record clearly establishes compliance with either of the two other requirements of Rule 651(c).

¶ 34    The record indicates that Chancey reviewed at least portions of the trial court record. Chancey informed the court that he reviewed the defendant's *pro se* petition, his letters, the transcripts of the plea hearings, and the decisions of this court in both of the defendant's direct appeals. However, he did not tell the court that he reviewed any other portions the trial court record. While it appears that Chancey did in fact review at least part of the trial court record—for

example, he pointed out that attorney Gatheman did not raise the question of the court's Rule 402 admonishments in the motion to withdraw guilty plea he filed on behalf of the defendant—the record does not clearly establish that Chancey reviewed other pertinent portions of the trial record, such as the transcript from the hearing on his motion to withdraw his plea.

¶ 35    Most significantly, Chancey did not make any amendments to the defendant's petition. The question before us is whether there were any necessary amendments he was required to make under the circumstances of this case. We find it was necessary to amend the petition to allege ineffective assistance of postplea counsel and appellate counsel in order to allow the defendant's petition to survive the State's motion to dismiss.

¶ 36    In reaching this conclusion, we are guided by the supreme court's decision in *Turner* and the Third District's decision in *Russell*. In *Turner*, the defendant filed a *pro se* postconviction petition. The trial court advanced his petition to the second stage and appointed counsel. *Turner*, 187 Ill. 2d at 409. Counsel did not file an amended petition. The court granted the State's motion to dismiss, finding that all of the defendant's claims were forfeited because they could have been raised on direct appeal but were not raised. *Id.*

¶ 37    The defendant appealed the dismissal of his petition, arguing that he did not receive reasonable assistance of counsel during the postconviction proceedings. *Id.* at 410. The supreme court agreed that counsel's failure to amend his petition fell short of the representation required by Rule 651(c). *Id.* at 412. The court explained that the defendant's claims would not have been forfeited if his attorney had amended the *pro se* petition to include a claim of ineffective assistance of appellate counsel. *Id.* at 413. The court further explained that failure to make this amendment "prevented the circuit court from considering the merits of [the] petitioner's claims and directly contributed to the dismissal of the petition without an evidentiary hearing." *Id.* The

14

court emphasized that adding an allegation of ineffective assistance of appellate counsel under these circumstances is "a routine amendment." *Id.* at 414. The supreme court held that because of this omission, along with counsel's failure to make other necessary amendments and provide evidentiary support, counsel's performance fell below the reasonable level of assistance required. *Id.* at 415.

¶ 38     The State argued there, much as it argues here, that the defendant's underlying claims lacked merit, and as such, the defendant failed to demonstrate prejudice from counsel's failure to amend the petition. *Id.* The supreme court declined to affirm on that basis. The court noted that the prejudice from counsel's failure to amend the petition to overcome the procedural bar of forfeiture was "palpable." *Id.* The court also explained that it is not appropriate to "speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties." *Id.* at 416.

¶ 39     Similarly, in *Russell*, the defendant's postconviction petition was dismissed at the second stage after appointed counsel failed to file an amended petition. *Russell*, 2016 IL App (3d) 140386, ¶ 5. The defendant's *pro se* petition raised five claims. *Id.* ¶ 4. In dismissing the defendant's petition, the postconviction court found that one of those claims was barred solely on the basis of forfeiture because it was not raised in the defendant's direct appeal. *Id.* ¶ 5.

¶ 40     On appeal, the defendant argued that counsel did not provide him with reasonable assistance because he failed to amend that claim to avoid forfeiture. *Id.* ¶ 8. Citing *Turner*, the Third District emphasized that the postconviction court was prevented from reaching the merits of the forfeited claim because counsel failed to amend the petition to include an allegation of ineffective assistance of appellate counsel, "an amendment that the *Turner* court called 'routine.' " *Id.* ¶ 11 (quoting *Turner*, 187 Ill. 2d at 413-14). We note that in *Russell*, unlike this

case, counsel filed a certificate of compliance with Rule 651(c), which, as we note earlier, created a rebuttable presumption that he provided reasonable assistance. Nevertheless, the *Russell* court found that counsel's failure to make this one "routine amendment" was sufficient to overcome the presumption of reasonable assistance. *Id.*

¶ 41 In *Russell*, as in *Turner* and the instant case, the State argued that the claim lacked merit and, as such, counsel's failure to amend it did not amount to unreasonable assistance. *Id.* ¶ 12. The court rejected this argument, explaining that where postconviction counsel has failed to fulfill his obligations under Rule 651(c), "remand is required, regardless of whether the claims raised in the petition had merit." *Id.* (citing *People v. Ross*, 2015 IL App (3d) 130077, ¶ 15).

¶ 42 Here, as in *Turner* and *Russell*, Chancey could have amended the defendant's petition to allege that Gatheman provided ineffective assistance on the defendant's motion to withdraw his plea and that appellate counsel was ineffective for failing to raise the question on direct appeal. As we discussed previously, in denying the defendant's motion to withdraw his plea, the trial court explicitly stated that the defendant failed to meet his burden of demonstrating that Huyett or Milner were ineffective in part because he did not present the testimony of either attorney. Had Chancey amended the defendant's petition to address this, it would have survived a motion to dismiss based on forfeiture. As our supreme court noted in *Turner*, this would have been a "routine amendment." See *Turner*, 187 Ill. 2d at 414. For the reasons that follow, we believe that on the record before us, the need for this routine amendment was particularly obvious.

¶ 43 The record raises questions about the manner in which Huyett and Milner handled the plea proceedings. Huyett negotiated a plea agreement with prosecutors before withdrawing due to a conflict of interest. It does not appear that Milner played any role in negotiating the plea deal, and it is undisputed that Huyett was involved in advising the defendant concerning his plea

16

on the day of the hearing in spite of his conflict of interest. Although the defendant told the court that he was satisfied with Huyett's representation, he did not agree to waive the conflict of interest.

¶ 44    In addition, the defendant testified at the hearing on the motion to withdraw his plea that he never discussed the plea agreement with either attorney prior to the day he pled guilty, and there are some indications in the record that the defendant did not truly understand the plea agreement even though he told the court that he did. For example, he has repeatedly asserted that his attorneys told him *this case* would be turned over to federal authorities if he did not plead guilty that very day. While none of this necessarily means that Huyett or Milner provided ineffective assistance, it raises questions. As the trial court noted in its order denying the defendant's motion to withdraw his plea, such questions might have been answered by the testimony of Huyett or Milner. We conclude that Chancey's failure to amend the defendant's petition to include a claim that Gatheman provided ineffective assistance fell below the reasonable level of assistance required under Rule 651. This was an amendment necessary to adequately present the defendant's claim.

¶ 45    The State argues, however, that the real problem with the defendant's petition was not forfeiture; the real problems were that his claim of ineffective assistance of plea counsel was actually considered by the trial court at the hearing on the defendant's motion to withdraw his plea and that both of his claims are refuted by the record. The State urges us to affirm on either of these bases. We decline to do so. As the supreme court explained in *Turner*, it is not appropriate to consider the merits of the defendant's petition where the trial court has not yet done so due to counsel's failure to make amendments that are necessary to avoid forfeiture. *Turner*, 187 Ill. 2d at 415-16. Moreover, as we have already explained, we believe that the

17

defendant's claim of ineffective assistance of plea counsel cannot be resolved without looking to matters outside the record. We therefore decline to affirm the court's ruling on either alternative basis urged by the State.

¶ 46   The defendant's next argument is that Chancey had an obligation to withdraw as counsel rather than continue to represent him while "repeatedly" telling the court that he believed the defendant's petition had no merit. He acknowledges in his reply brief that we may reverse the court's ruling without deciding this question. However, because his argument touches on a question that might arise on remand, we will address it.

¶ 47   The defendant bases his argument largely on *People v. Kuehner*, 2015 IL 117695, and *People v. Shortridge*, 2012 IL App (4th) 100663. In *Shortridge*, the defendant filed a *pro se* petition, and the court appointed counsel. Counsel filed a certificate of compliance with Rule 651(c) but did not file an amended petition. *Shortridge*, 2012 IL App (4th) 100663, ¶ 4. The State filed a motion to dismiss, arguing that the defendant's claims were contradicted by the record. *Id.* ¶ 5. At a hearing, defense counsel informed the court that he and the state's attorney (who was not present at the hearing) had agreed that defense counsel would appear alone and ask the court to reschedule the hearing. He then stated, however, that " 'at this point,' he was 'going to confess the motion to dismiss.' " *Id.* ¶ 6. The court therefore dismissed the petition. *Id.*

¶ 48   On appeal, the Fourth District found that counsel failed to fulfill his obligation to provide reasonable assistance. *Id.* ¶ 15. The court stated, "If counsel believes that his client's claims are frivolous or without merit, his ethical obligation is to seek a withdrawal as counsel." *Id.* ¶ 13 (citing *Greer*, 212 Ill. 2d at 209). The court reversed the order dismissing the defendant's petition and remanded the matter for further proceedings with directions to appoint a new attorney to represent the defendant. *Id.* ¶ 15. The court went on to state, "If newly appointed counsel, after

18

complying with the mandates of Rule 651, determines that [the] defendant's petition lacks any meritorious issue, then he should move to withdraw as counsel. At that point, *the circuit court would need to determine whether the record supported counsel's assertion that the petition was without merit*." (Emphasis added.) *Id.*

¶ 49 We agree with the State that what occurred in *Shortridge* is significantly different from what occurred here. There, counsel completely failed to represent the defendant's interests *at all*, and the defendant's petition was dismissed with no advocacy or argument on his behalf at a hearing at which the State did not even present any arguments in favor of its motion to dismiss. See *id.* (stating that "appointed counsel should either represent [the] defendant's interests in the proceedings or move to withdraw"). Here, we do not believe that Chancey failed to advocate on the defendant's behalf at all, and he did not unilaterally withdraw the defendant's petition from consideration. However, we have already concluded that reversal is warranted because his advocacy on behalf of the defendant fell short of the reasonable level of assistance required, and we agree with the *Shortridge* court's assessment of what should occur on remand. We find support for this position in the supreme court's holdings in *Greer* and *Kuehner*.

¶ 50 We note that neither *Greer* nor *Kuehner* involved the precise situation present here. In both of those cases, appointed counsel actually sought to withdraw, so the court was not called upon to decide whether counsel was obliged to do so. *Kuehner*, 2015 IL 117695, ¶ 9; *Greer*, 212 Ill. 2d at 195. However, we find both cases instructive.

¶ 51 At issue in *Greer* was whether appointed postconviction counsel is *permitted* to withdraw under the Post-Conviction Hearing Act. See *Greer*, 212 Ill. 2d at 207. The court concluded that "the legislature did not intend to require" postconviction counsel to continue representing a defendant "after counsel determines that [the] defendant's petition is frivolous and patently

19

without merit." *Id.* at 209. The court went on to state, "Nothing in the [Post-Conviction Hearing] Act requires the attorney to do so, and the attorney is clearly *prohibited* from doing so by his or her ethical obligations." (Emphasis in original.) *Id.* Although the issue in *Greer* was whether counsel *may* withdraw, not whether counsel *must* withdraw, we cannot ignore this emphatic statement from our supreme court.

¶ 52    In *Kuehner*, the question before the court was not whether counsel is obliged to withdraw, but what counsel is obliged to assert if he does seek to withdraw. There, as in this case, the defendant's petition was advanced to the second stage after the court expressly found that the petition was neither frivolous nor patently without merit. *Kuehner*, 2015 IL 117695, ¶ 8. The supreme court found this fact significant, explaining that once a postconviction court determines that, "on its face, the [defendant's] petition [is] neither frivolous nor patently without merit," counsel should not be allowed to simply "second guess" the court's determination. *Id.* ¶ 20. The court recognized that in some cases, counsel might discover that a defendant's claims are in fact frivolous in spite of the court's initial determination to the contrary. The court held that in such cases, "counsel bears the burden of demonstrating, with respect to each of the defendant's *pro se* claims, why the trial court's initial assessment was incorrect." *Id.* ¶ 21.

¶ 53    We believe that the concerns underlying the court's holding in *Kuehner* are implicated here as well. Here, the court expressly determined that at least one of the defendant's claims was not frivolous or patently without merit. Because we have found that Chancey did not provide the defendant with the reasonable level of assistance guaranteed under the Post-Conviction Hearing Act, we must remand this matter for further second-stage proceedings. On remand, the court should appoint a new attorney to represent the defendant. If that attorney investigates the defendant's claims and discovers that they are frivolous and patently without merit despite the

20

court's initial finding to the contrary, we believe counsel should file a motion to withdraw that comports with the requirements of *Kuehner*. This course of action is necessary because it would enable the postconviction court to reconsider its previous ruling, as the *Kuehner* court intended. See *id.* (noting that a motion to withdraw under these circumstances is similar to a motion to reconsider).

¶ 54　　Finally, the defendant argues that he is entitled to a credit of $5 per day against his drug assessment fine for the time he spent in custody prior to sentencing. See 725 ILCS 5/110-14 (West 2010). He correctly notes that this issue may be raised at any time. See *People v. Caballero*, 228 Ill. 2d 79, 88 (2008). The State concedes that the defendant is entitled to this credit, and we agree. The defendant is entitled to a credit against his $2000 drug assessment fine of $5 per day for 28 days for a total of $140. We therefore direct the circuit court to amend the mittimus on remand to reflect this credit.

¶ 55　　For the reasons stated, we reverse the court's order dismissing the defendant's petition. We remand the matter for further proceedings with directions.

¶ 56　　Reversed; remanded with directions.

2018 IL App (5th) 140385

NO. 5-14-0385

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 10-CF-374 |
| | ) | |
| JESSE WALLACE, | ) | Honorable |
| | ) | Mark W. Stedelin, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:**     March 12, 2018

**Justices:**     Honorable Melissa A. Chapman, J.

Honorable James R. Moore, and
Honorable David K. Overstreet, J.,
Concur

**Attorneys for Appellant**     Patricia Mysza, State Appellate Defender, Maggie A. Heim, Assistant Appellate Defender, Office of the State Appellate Defender, First Judicial District, 203 North LaSalle, 24th Floor, Chicago, IL 60601

**Attorneys for Appellee**     Patrick Delfino, Director, David J. Robinson, Acting Deputy Director, Kelly M. Stacey, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864