NOTICE

Decision filed 08/05/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 20025-U

NO. 5-20-0025

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-CF-1002 |
| | ) | |
| WILLIAM A. STEVENSON, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The defendant was denied the reasonable assistance of counsel required under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) where postconviction counsel failed to attach documentary evidence to the petition to support the defendant's claims even though those claims relied upon evidence outside the record. Counsel's failure to attach supporting documents directly led to the second-stage dismissal of his petition.

¶ 2   The defendant, William A. Stevenson, appeals the second-stage dismissal of his postconviction petition, arguing that postconviction counsel did not provide him with reasonable assistance because she (1) adopted his *pro se* petition rather than making amendments necessary to adequately shape his legal claims, (2) failed to attach necessary affidavits and documentary evidence to support the allegations in his petition, and (3) failed to request and examine transcripts from two relevant hearings. We reverse.

1

¶ 3                                    I. BACKGROUND

¶ 4     In April 2018, the defendant was indicted on four counts of criminal sexual assault (720

ILCS 5/11-1.20(a)(4) (West 2016)). The charges involved allegations that he sexually abused his

stepdaughter. Attorney John Stobbs was appointed to represent the defendant.

¶ 5     Despite being represented by counsel, the defendant filed several *pro se* motions and letters

with the court. In a motion to suppress evidence, he asserted that police officers "made him make

false statements and he was under severe duress." He further alleged that he was "not in a right

frame of mind" during his interview because he was having seizures and was not given proper

medication. In another motion to suppress, he alleged that he suffered a seizure while being held

on a 72-hour warrant; that although he did not recall the questioning that took place during this

time, he was told later that what he said during that questioning led to the charges against him; and

that this would not have happened if he were receiving proper medication. In a third motion to

suppress, the defendant asserted that he was "confused and not of sound mind." He explained that

this was so because he was tired and hungry and had not had a cigarette in days. In a motion for a

fitness hearing, the defendant asserted that he would prove that he suffered from severe brain

trauma and grand mal seizures and that he was "having emotional breakdowns."

¶ 6     The defendant also filed motions and wrote letters to the court asking for his attorney to be

dismissed. In pertinent part, he asserted that his attorney, Stobbs, was encouraging him to plead

guilty without doing anything for the defendant. On June 11, 2018, Stobbs filed a motion to

withdraw at the defendant's request.

¶ 7     On July 16, 2018, the court held a hearing on Stobbs's motion to withdraw. Judge Napp

asked the defendant if he agreed to allowing Stobbs to withdraw, to which the defendant replied,

"Yes, ma'am." Judge Napp then explained that if she allowed Stobbs to withdraw, a different

2

public defender would not be appointed, and the defendant would have to hire an attorney or represent himself. The defendant indicated that he understood.

¶ 8     The following exchange occurred:

"THE COURT:  You seem confused, so I want to make sure you—I want to make sure I'm answering any questions you have.

THE DEFENDANT: Ma'am, I assumed—I just had before I came in here with Mr. Stobbs a question.

THE COURT: So, here's the thing, there was an off-the-record discussion with your attorney and with the State's Attorney wherein he indicated what you had talked to him about. The State's Attorney indicated that they're not interested in any of that. So, I'm back to—

THE DEFENDANT: I'm not even—

THE COURT: Hold on. I'm back to this original question.

THE DEFENDANT: Okay. All right.

THE COURT: Are you not wanting Mr. Stobbs as your attorney anymore?

THE DEFENDANT: Correct.

THE COURT: So you're going to hire a private attorney?

THE DEFENDANT: No, ma'am. I can't afford one.

THE COURT: So you can't afford an attorney, but you don't want the Public Defender. So what are you going to do?

THE DEFENDANT: I'm going to try and do it myself, ma'am.

THE COURT: I can't think of a worse thing you could possibly do in representing yourself. You're charged with very serious offenses, if I recollect."

3

The defendant acknowledged that he was charged with serious offenses. The court allowed Stobbs to withdraw as counsel. However, the court scheduled the matter for an additional hearing the following day to determine whether the defendant was competent to represent himself.

¶ 9    The July 17, 2018, hearing began with the following exchange between the defendant and Judge Napp:

"THE COURT: So before I begin, Mr. Stevenson, is it still your desire to represent yourself in this matter?

THE DEFENDANT: Um, my family and I feel that it's not in my best interest.

THE COURT: To represent yourself?

THE DEFENDANT: Correct. But I would like to accept the—my pastor—both pastors and my family would like to accept—just go ahead and accept the plea and see if the State's Attorney would lower the plea."

Judge Napp explained that before considering whether to accept the defendant's plea, she first had to resolve the question of the defendant's ability to represent himself. She noted that if the defendant wanted her to reappoint the public defender's office, she would do so. She explained, however, that the defendant's case would likely be assigned to Stobbs.

¶ 10    Judge Napp asked the prosecutor to describe the State's plea offer. The prosecutor explained that the offer had been sent to defense counsel Stobbs in May, and that the offer called for the defendant to plead guilty to count I in exchange for an agreed sentence of 15 years and the dismissal of counts II, III, and IV.

¶ 11    Addressing the defendant again, the court asked if he wanted the public defender's office appointed to represent him again. The defendant replied, "No." He stated that he wanted to represent himself. In response, Judge Napp stated, "Then I have to go over the range of penalties

4

with you." She explained that the defendant was facing four counts of criminal sexual assault and that each charge was a Class 1 felony with a sentencing range of 4 to 15 years. She explained that the defendant was subject to mandatory consecutive sentences, so if convicted on all four charges, he would be facing a total prison term of 16 to 60 years. Judge Napp further advised the defendant that upon his release from prison, he would be required to serve a term of mandatory supervised release of from three years to life.

¶ 12    When asked if he understood the range of penalties, the defendant replied, "I suppose I didn't, ma'am, because I was trying to take the 15 at 85 percent." The following discussion then occurred:

> "THE COURT: I understand you're saying you want to accept an offer, but I'm not willing to let you accept that offer right now until I'm sure that you understand the ramifications of everything. So I'll tell you for the record so that it's clear, yesterday when I spoke with you, Mr. Stevenson, you were very polite but you seemed confused. And today as I sit here talking to you, again, you're very polite, but you seem confused. ***
>
> You seem a little emotional right now, is that fair to say, Mr. Stevenson?
>
> THE DEFENDANT: (Indicating.)
>
> THE COURT: Because you can't speak right now, because you're emotional; is that fair?
>
> THE DEFENDANT: (Indicating.)
>
> THE COURT: I would note for the record that he has nodded his head yes."

Judge Napp indicated that she did not feel she could let the defendant represent himself. The defendant agreed that he "obviously" could not represent himself. The judge advised him that she

would reappoint the Madison County Public Defender's office to represent him and that she would try to arrange for someone from that office to talk to him before the next court date.

¶ 13     After consulting with Stobbs, the defendant requested a plea hearing to be held two days later, on July 19, 2018. That hearing was held before Judge Schroeder.

¶ 14     At the outset, Judge Schroeder noted that, in addition to the charges in this case, a misdemeanor charge of domestic battery and a traffic ticket for driving while license revoked were pending against the defendant. Attorney Stobbs informed the court that the plea agreement offered by the State included the dismissal of those charges as well as counts II, III, and IV of the indictment in this case. He indicated that the agreement called for the defendant to plead guilty to count I and agree to a sentence of 15 years in exchange for the State's agreement to dismiss the other pending charges. Stobbs further informed the court that he had spoken with the defendant about the terms of the plea agreement for approximately half an hour two days earlier, and that he spoke about it with him again before court on the day of the plea hearing.

¶ 15     Judge Schroeder then addressed the defendant, asking him if he had enough time to think about the plea agreement and enough time to discuss it with his attorney. The defendant replied, "Yes, sir, I have." The judge then asked the defendant whether pleading guilty was what he believed he should do. The defendant replied, "[Y]eah, at this point I guess that's what I need to do." He stated, however, that there was something he wanted to say to his attorney. Judge Schroeder allowed the defendant time to consult with Stobbs off the record.

¶ 16     After the defendant's off-the-record conversation with Stobbs, Judge Schroeder noted that the defendant had expressed some confusion about mandatory supervised release and the requirement that he register as a sex offender. He explained these two points to the defendant, after which, the defendant indicated that he understood.

¶ 17    Judge Schroeder then asked the defendant, "Have you had enough time to ask Mr. Stobbs any questions you have about what this plea is and what the consequences are and what is going to happen?" The defendant replied, "Yes, sir." When asked if he was under the influence of drugs or alcohol, the defendant replied, "I am not." When asked if he was "suffering from any physical or mental disability that would prevent [him] from understanding" what was happening during the plea hearing, the defendant said, "No."

¶ 18    Judge Schroeder went on to explain the allegations in the charge, various rights the defendant would have if he went to trial, and the fact he would give up these rights by pleading guilty. When asked if he understood, the defendant indicated that he did. The court advised the defendant of the range of penalties he could face, and the defendant indicated that he understood.

¶ 19    After allowing the State to present the factual basis, Judge Schroeder questioned the defendant further. When asked if anyone had forced or threatened him to plead guilty, the defendant said, "No." Asked if he had been promised "anything other than the plea negotiations stated here in court" to get him to plead guilty, the defendant answered in the negative. Asked if he had discussed the plea agreement with his attorney, the defendant said, "Yes." The court found that the plea was knowing and voluntary. After accepting the defendant's plea, Judge Schroeder explained the defendant's appeal rights, including the fact that to challenge his sentence or conviction, he must first file a motion to withdraw his plea.

¶ 20    On July 25, 2018, the defendant sent a letter to Judge Napp. In it, he expressed concern for his health due to a "brain bleed caused by what [he] was told were cavernomas, one of which exploded." He stated that he was "in fear of being hit in [his] head," which would worsen his condition. He also stated, "My meds are still not correct in here, ma'am. I am suffering daily

7

emotion an[d] mental an[d] physical." He concluded by stating that he needed medical attention. He did not address his sentence or his plea.

¶ 21    On August 20, 2018, the defendant filed a *pro se* motion to reduce his sentence. He alleged that (1) he had never been incarcerated previously, (2) his medical conditions made him particularly vulnerable to death or disability if he were hit in the head, and (3) he was represented by "ineffective counsel because he didn't defend me adequately an[d] pushed me into taking a plea agreement without knowing the full consequences." The defendant did not ask to withdraw his plea.

¶ 22    On September 12, 2018, the court denied the defendant's motion, stating that "[t]he sentence entered into in the above case was by agreement of the parties pursuant to a fully negotiated plea." The court noted that, as such, to challenge his sentence, the defendant must first file a motion to withdraw his plea. The defendant did not file a direct appeal from that ruling.

¶ 23    On February 11, 2019, the defendant filed his *pro se* postconviction petition. In it, he alleged that he was pressured to accept a plea by his appointed attorney, Stobbs, and that Stobbs provided ineffective assistance because he had a large case load and did not care about the defendant's condition. The defendant further alleged that at the July 16, 2018, hearing, Judge Napp stated that she believed the defendant was emotional, and that at the July 17 hearing, the "Honorable Kyle Napp could tell [he] was still under mental medical duress." The defendant alleged that on the date of the plea hearing, he had been taking "crushed up medison [*sic*] of variety" and that he was "mentally unstable" as a result. Finally, the defendant asserted that a review of courtroom cameras would show that he was under "medical duress" on all three July 2018 court dates. We note that the courtroom does not have cameras.

8

¶ 24     On June 5, 2019, Judge Napp made the following docket entry: "As 90 days have passed since the filing of the defendant's motion, the State is hereby ordered to file a written response or a motion to dismiss." On July 24, she appointed attorney Donna Polinske to represent the defendant.

¶ 25     The State filed a motion to dismiss the defendant's petition and an amended motion to dismiss. In the amended motion, the State argued that the defendant's plea was knowing and voluntary and that the record refuted his claims. The State asserted that (1) the court fully admonished the defendant concerning the range of penalties and consequences of pleading guilty; (2) when asked by Judge Schroeder if he had been coerced into accepting a plea, the defendant responded in the negative; (3) the defendant denied being under the influence of drugs or alcohol; (4) the defendant likewise denied having any mental or physical disability; (5) despite being fully advised of his appeal rights, the defendant did not file a motion to withdraw his plea; and (6) plea counsel negotiated a 15-year sentence where the defendant was facing an aggregate sentence of 16 to 60 years if convicted after a trial.

¶ 26     On November 15, 2019, Polinske filed a motion to adopt the defendant's *pro se* petition. She did not amend the petition or attach affidavits or other documents.

¶ 27     The matter came for a hearing on the State's motion to dismiss on January 16, 2020, before Judge Napp. The prosecutor acknowledged that because the matter was at the second stage of postconviction proceedings, the court must take the allegations of the defendant's petition as true unless they are contradicted by the record. She argued that the defendant's allegations in this case were contradicted by the record. She noted that Judge Schroeder asked the defendant multiple times if taking the plea agreement was what he wanted to do, and the defendant said "yes" each

9

time. The prosecutor further noted that when asked if he had been given enough time to discuss the matter with his attorney, the defendant also answered in the affirmative.

¶ 28    The prosecutor next argued, "As far as whether or not he was under any medical duress or medication that would have prevented him from understanding what he was doing, I don't believe there's anything in the record that shows that." She noted that the defendant said "no" when asked if he was under the influence of drugs or alcohol and when asked if he was suffering from any mental or physical disability.

¶ 29    In response, defense counsel Polinske first noted that when the defendant was asked if he wanted to plead guilty, he said, "I guess that's what I have to do." She next asserted that two days before the plea hearing, the court had noted that the defendant "was emotionally unstable." The following discussion then occurred:

> "THE COURT: I'm going to stop you for a second. Do you have a transcript of that particular day?
>
> MS. POLINSKE: No, I don't, Your Honor.
>
> THE COURT: Because I was the judge that day, and I didn't note that he was under duress."

Judge Napp explained that her concern at that hearing was simply that she did not think the defendant was capable of representing himself.

¶ 30    Defense counsel argued, "I think the totality of the circumstances is what the court should look at with respect to my client's petition. The medical record—I subpoenaed the records from the jail, which I have this morning." She informed the court that the defendant had been on suicide watch at one point. She noted that a jail employee named Ms. Hebrank was present. We note that,

10

presumably, Ms. Hebrank could lay a foundation for the admission of the records into evidence. Counsel stated, "I have an Exhibit A."

¶ 31    At this point, the State objected, arguing that the admission of evidence would be "more appropriate at a third-stage hearing." In response, defense counsel argued that "if the court is going to progress this to a third-stage hearing, the court needs to know what medications he was on at the time to make that decision." The court sustained the State's objection, noting that her decision at the second stage of postconviction proceedings must be based solely on the postconviction petition "as filed," including any attached affidavits, and the State's motion to dismiss.

¶ 32    Defense counsel continued her argument, stating that the defendant was on medication at the time of the plea hearing, and the court was not aware of this fact. She also argued that because plea counsel was reassigned to the case only two days before the plea hearing, it was not clear that the defendant truly had enough time to consult with him before entering the plea.

¶ 33    In ruling from the bench, Judge Napp noted that although she was not the judge who took the defendant's plea, she reviewed the entire record in this case. She then stated, "Mr. Stevenson was prolific in his filing of *pro se* motions ***. While his spelling was not always accurate in those motions, the content of what he said was clear, coherent, cogent, and understandable." Judge Napp directly addressed the defendant's allegation that she could tell he was "still under mental medical duress" at the July 17, 2018, hearing, stating, "That's not what the record says, and that's not what I did." She explained that her concern at that hearing was that the defendant did not have enough time to think through his decisions and have his questions answered by counsel.

¶ 34    Judge Napp went on to discuss the transcript of the plea hearing. She noted that Judge Schroeder gave the defendant additional time to consult with his attorney off the record; that Judge Schroeder spent additional time explaining to the defendant the collateral consequences of his plea;

and that when asked about "physical or mental duress," the defendant said, "No." For these reasons, the court found the allegations of the defendant's petition to be "100 percent refute[d]" by the record. She therefore granted the State's motion to dismiss. The defendant filed the instant appeal the same day.

¶ 35                                    II. ANALYSIS

¶ 36     The defendant argues that he received unreasonable assistance from postconviction counsel because she failed to (1) file an amended postconviction petition, (2) attach affidavits or other documents to the petition, and (3) obtain and review transcripts from the hearings that took place on July 16 and 17, 2018. We find that counsel's failure to attach affidavits and other documentary evidence—particularly the defendant's medical records—amounted to unreasonable assistance. We need not consider whether her failure to amend the petition or her apparent failure to obtain and review the two transcripts was likewise unreasonable.

¶ 37     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) affords a remedy to a defendant asserting that his or her conviction or sentence resulted from a substantial deprivation of constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8. Postconviction proceedings involve three different stages. At the first stage, the court reviews the petition within 90 days to determine whether it is frivolous and patently without merit. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). If the petition is not dismissed within 90 days, it is advanced to the second stage and docketed for further proceedings. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); *Edwards*, 197 Ill. 2d at 245.

¶ 38     Once a postconviction petition advances to the second stage, an indigent defendant is entitled to the appointment of counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). At this stage,

12

the State may respond to the defendant's petition by filing an answer or a motion to dismiss. *People v. Burns*, 2019 IL App (4th) 170018, ¶ 16.

¶ 39    At the second stage, the postconviction court determines whether the defendant's petition, along with any attached affidavits or other documentary evidence, makes a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. In making this determination, the court must take as true all well-pled facts alleged by the defendant unless they are rebutted by the record. *Pendleton*, 223 Ill. 2d at 473. However, it is the defendant's burden to make the required substantial showing of a constitutional violation. *Id.* If the defendant can make this showing, the petition advances to the third stage of postconviction proceedings—an evidentiary hearing on his claims. If the defendant cannot make this showing, the petition is dismissed. *Edwards*, 197 Ill. 2d at 246.

¶ 40    Because the right to counsel in postconviction proceedings is wholly statutory, defendants are entitled only to the level of assistance mandated by the Post-Conviction Hearing Act, which is a reasonable level of assistance. *People v. Turner*, 187 Ill. 2d 406, 410 (1999). To provide a reasonable level of assistance, postconviction counsel must comply with the requirements of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 30. The rule requires counsel to (1) consult with the defendant to ascertain his claims of constitutional violations, (2) examine the trial record, and (3) make any amendments to the defendant's *pro se* petition that are necessary to adequately present his claims to the court. *Burns*, 2019 IL App (4th) 170018, ¶ 20. Counsel's role is to shape the defendant's claims into proper legal form and present them to the court. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 38. "If the [defendant's] claims are based on evidence outside the record, counsel is required to attach affidavits or other evidence to adequately present those claims." *Burns*, 2019 IL App (4th) 170018, ¶ 20; see also 725 ILCS 5/122-2 (West 2016).

13

¶ 41    Rule 651(c) does not require postconviction counsel to raise claims other than those asserted by the defendant in his petition. *Collins*, 2021 IL App (1st) 170597, ¶ 39. The rule also does not require counsel to examine any more of the record than is necessary to adequately present those claims to the court. *People v. Davis*, 156 Ill. 2d 149, 164 (1993). Finally, Rule 651(c) does not require counsel to amend a defendant's *pro se* petition; it mandates only that counsel make amendments necessary to adequately present the defendant's claims. *Turner*, 187 Ill. 2d at 412. Moreover, counsel is not required to advance claims that are "frivolous or spurious." *Pendleton*, 223 Ill. 2d at 472.

¶ 42    Where, as here, postconviction counsel files a certificate of compliance with Rule 651(c), the certificate creates a rebuttable presumption that counsel has complied with requirements of the rule. *Collins*, 2021 IL App (1st) 170597, ¶ 31. It is the defendant's burden to demonstrate to this court that counsel did not substantially comply with these requirements. *Id.* Compliance with the requirements of Rule 651(c) is mandatory. *Perkins*, 229 Ill. 2d at 50. However, strict compliance is not necessary. Instead, "substantial compliance is sufficient." *Collins*, 2021 IL App (1st) 170597, ¶ 30. We review *de novo* the question of whether postconviction counsel has substantially complied with the requirements of the rule. *Id.* ¶ 31.

¶ 43    We begin our analysis by observing that the Post-Conviction Hearing Act explicitly provides that a postconviction "petition *shall* have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." (Emphasis added.) 725 ILCS 5/122-2 (West 2016). Here, postconviction counsel neither attached supporting documents nor filed an amended petition explaining why they were not attached. The defendant contends that, in order to adequately present his claims to the court, counsel was required to attach the following documents to his petition: (1) the defendant's own affidavit describing his

14

discussions with his plea attorney and the medications he was taking during the plea proceedings; (2) the defendant's medical records from the county jail; (3) an affidavit from Ms. Hebrank, the jail employee who brought the defendant's records to the hearing on the State's motion to dismiss; and (4) transcripts from the hearings that were held on July 16 and 17, 2018. We agree that at the very least, counsel was required to attach the defendant's affidavit and his medical records or to explain their absence in an amended petition. We also find that her failure to do so directly contributed to the dismissal of the defendant's petition.

¶ 44    Substantial compliance with Rule 651(c) requires postconviction counsel to take the steps that are necessary to present the defendant's claims to the court, including overcoming procedural hurdles that will result in dismissal of his petition. *Perkins*, 229 Ill. 2d at 44. To make a showing of a substantial violation of constitutional rights, as required to survive a second-stage motion to dismiss, the allegations in the petition " 'must be supported by the record in the case or by its accompanying affidavits.' " *Burns*, 2019 IL App (4th) 170018, ¶ 16 (quoting *People v. Coleman*, 183 Ill. 2d 366, 381 (1998)).

¶ 45    Here, counsel recognized the need to provide the court with information on the medications the defendant was taking for the court to advance the petition to the third stage. However, she failed to provide any documentary support for the defendant's allegations about his medical conditions and the medications he was taking. See *Turner*, 187 Ill. 2d at 414 (noting that postconviction counsel's failure to attach supporting affidavits was "telling" where counsel argued that the defendant's claim relied on evidence outside the record). Although counsel attempted to overcome her omission by offering the records into evidence at the hearing, such efforts are not sufficient to overcome the lack of supporting documentation attached to the petition itself. *Id.* at 413.

15

¶ 46    The State, however, argues that the record affirmatively refuted the defendant's claim that his plea was not knowing and voluntary. This is so, the State contends, because at the plea hearing, the defendant acknowledged that he was not "under the influence" of drugs or alcohol and that he did not have any mental or physical disabilities that prevented him from understanding the nature of the proceedings. We find this argument unpersuasive. While such acknowledgements may be sufficient under some circumstances to refute a defendant's subsequent bare assertion that his plea was not knowing and voluntary, the record in this case indicates that the defendant repeatedly sent letters and *pro se* filings to the court voicing his concern that he was not receiving the proper medication for his brain injuries during the plea proceedings. Had counsel provided the court with documentary evidence to support his claim, this may well have been adequate to raise questions concerning whether the defendant was mentally impaired despite the acknowledgements he made in response to Judge Schroeder's questions at the plea hearing. See *Wallace*, 2018 IL App (5th) 140385, ¶ 40. Her failure to do so prevented the court from considering the merits of the defendant's claims. As such, her error "directly contributed to the dismissal of the petition without an evidentiary hearing." *Turner*, 187 Ill. 2d at 413.

¶ 47    We reach a similar conclusion with respect to counsel's failure to support the defendant's claims of ineffective assistance of plea counsel with, at the very least, an affidavit from the defendant. It is true that in response to Judge Schroeder's questioning, the defendant acknowledged that he had enough time to discuss the plea agreement and its consequences with his plea attorney and that no one threatened or coerced him to plead guilty. However, the record also indicates that the defendant stated prior to the plea hearing that he was dissatisfied with plea counsel Stobbs because Stobbs was pressuring him to accept the plea agreement. In addition, it is worth noting that, while the defendant confirmed at the plea hearing that pleading guilty was his choice, many

16

of his statements to that effect were equivocal. At the July 17, 2018, hearing, for example, the defendant stated that his pastors and his family wanted him to "just go ahead and accept the plea and see if the State's Attorney would lower the plea." Similarly, when asked at the plea hearing to confirm his desire to accept the plea agreement, the defendant replied, "I guess that's what I need to do." Had counsel attached an affidavit from the defendant detailing his off-the-record discussions with Stobbs and the pressure he alleges he felt to plead guilty, it might have been sufficient to raise questions.

¶ 48 We express no opinion as to the underlying merit of the defendant's claims or the likelihood that he will ultimately succeed. It is inappropriate for us to speculate as to whether the postconviction court would have dismissed the defendant's petition had postconviction counsel "adequately performed [her] duties under Rule 651(c)." *Turner*, 187 Ill. 2d at 416. We hold only that because the defendant did not receive the reasonable assistance of postconviction counsel contemplated by the Post-Conviction Hearing Act, the court's dismissal of his petition must be reversed, and we must remand the matter for further second-stage proceedings.

¶ 49 Finally, we note that our conclusion that counsel provided unreasonable assistance by failing to attach affidavits and other documentary evidence to the petition is sufficient to resolve the question before us. As such, we need not consider whether counsel likewise provided unreasonable assistance by failing to amend the petition to shape the defendant's claims into proper legal form and by apparently failing to review the transcripts of the hearings that occurred on July 16 and 17, 2018.

¶ 50                                    III. CONCLUSION

¶ 51 For the foregoing reasons, we reverse the court's order dismissing the defendant's postconviction petition. We remand for further proceedings.

¶ 52    Reversed and remanded.