NOTICE

Decision filed 06/16/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180375-U

NO. 5-18-0375

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 00-CF-157 |
| | ) | |
| LARRY D. GREER, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The second-stage dismissal of the defendant's *pro se* postconviction petition is reversed because the record on appeal rebuts the presumption that postconviction counsel substantially complied with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Because the defendant did not receive a reasonable level of assistance from postconviction counsel, we remand for further second-stage proceedings with new counsel appointed to represent the defendant.

¶ 2    The defendant, Larry D. Greer, appeals the dismissal, in the circuit court of Madison County, of his *pro se* postconviction petition at the second stage of proceedings. He asks this court, *inter alia*, to remand this cause for further second-stage proceedings with new counsel, contending his postconviction counsel failed to provide a reasonable level of assistance to him because counsel failed to amend his petition to shape his *pro se* claims into appropriate legal form. For the following

1

reasons, we reverse the order of the circuit court of Madison County that dismissed the defendant's *pro se* postconviction petition, and we remand for further second-stage proceedings with new counsel.

¶ 3                                    I. BACKGROUND

¶ 4     Following a trial by jury, the defendant was convicted, on a theory of accountability, of first degree murder for his role in the September 12, 1998, killing of Eugene Brian Warr. The defendant was sentenced to a term of 40 years in prison. The defendant's conviction and sentence were upheld on appeal. See *People v. Greer*, 2012 IL App (5th) 090257-U. On February 19, 2013, the defendant filed the *pro se* postconviction petition (the petition) that is the subject of this appeal. The petition was 125 handwritten pages long and included extensive quotations from transcripts in the record on appeal and extensive citation to case law. The petition raised multiple claims of, *inter alia*, ineffective assistance of trial counsel and of appellate counsel, as well as prosecutorial misconduct with regard to the circumstances surrounding a purported granting of immunity to the defendant. The petition was accompanied by approximately 160 pages of exhibits, comprised of the transcripts referenced above and other relevant documents, including an affidavit from the defendant. On approximately February 22, 2013, postconviction counsel—who had previously served as posttrial counsel for the defendant from approximately 2003 to 2009, prior to the filing of the petition, including with regard to allegations of ineffective assistance of trial counsel made by the defendant shortly after his trial—was appointed to represent the defendant with regard to the petition.

¶ 5     On May 30, 2013, an order was entered by the circuit court that noted that the defendant had met with his postconviction counsel, and that "[t]he [S]tate is to file a [m]otion to [d]ismiss." On July 23, 2013, the State filed its first motion to dismiss, alleging a timeliness issue with the petition. On August 28, 2013, following a hearing, the motion was denied, with the circuit court

2

ruling that the petition was not untimely. At the hearing, the circuit court noted that an earlier filing which the State had characterized in its motion to dismiss as a previous postconviction petition, was in fact a "continuation" of the defendant's earlier posttrial motion. The circuit court subsequently referred to the earlier filing as "a post-trial motion with supplements rather than a post-conviction petition." When asked, counsel for the State agreed with this characterization. The circuit court then announced that the State would be allowed to file a second motion to dismiss if it wished to do so, and that if it did not, the case would proceed to a third-stage evidentiary hearing. When asked, the defendant's postconviction counsel stated that he agreed with this procedure. When given the opportunity to question the circuit court about these rulings, neither the State nor the defendant's postconviction counsel asked any questions.

¶ 6       On January 21, 2014, the circuit court granted the request of the State to file a second motion to dismiss. On June 2, 2014, the State filed its second motion to dismiss, again alleging timeliness issues (although different ones than previously alleged), but also alleging other reasons the petition should be dismissed. On July 14, 2014, the defendant, although represented by postconviction counsel, filed a *pro se* supplemental memorandum of law in support of the petition. On July 23, 2014, the circuit court entered an order that noted that the defendant had again met with his postconviction counsel, and that "[m]ore time is requested to file an amended pleading." On August 29, 2014, the defendant, although still represented by postconviction counsel, filed *pro se* a 25-page handwritten reply to the State's motion to dismiss, along with supporting documentation and a *pro se* motion for a copy of grand jury proceedings and trial exhibits.

¶ 7       On September 2, 2014, following the retirement from the bench of the judge who had been handling it, the case was assigned to another judge for disposition. On September 4, 2014, the new judge entered an order in which he noted that the defendant had again consulted with postconviction counsel, this time "in light of" the defendant's aforementioned August 29, 2014,

*pro se* filings. On October 21, 2014, the circuit court entered an order that gave the defendant "28 days to formally respond to" the State's motion to dismiss. On February 17, 2015, a hearing was held on matters unrelated to this appeal. However, of relevance to this appeal, at the hearing, the defendant's postconviction counsel noted the defendant's August 29, 2014, *pro se* filings, and stated, "I suppose I will have to file a certificate or make my own amendments as I deem necessary before we can go much further." Thereafter, the circuit court stated, "Okay. That's what we will do. I will wait to hear from you all."

¶ 8 Additional orders were entered by the circuit court continuing or resetting the case, with at least one of those orders—the order entered on September 15, 2015—specifically noting that the case was being reset at the request of the defendant's postconviction counsel. On October 20, 2015, a hearing was held. The defendant's postconviction counsel noted that he had spent time with the defendant discussing the aforementioned matter not relevant to this appeal, and believed it was resolved. He requested "that given the status of this case at this point," the court "not proceed to any kind of a hearing or argument on the State's motion to dismiss today, but rather a—once we're able to move past this issue, I think I can better focus on his request/his petitions." The circuit court subsequently asked, "how about if I give you 30 days for you to review the file and see if you need to make any amendments? Do you think that gives you enough time?" The defendant's postconviction counsel responded, "I believe so," but added, "I think [the defendant] had sent a request for transcripts in here recently concerning the Grand Jury testimony where he was indicted." He added, "I would probably want to be requesting those before we go much further." The circuit court asked if it would work to have the State "comply with—in providing the record and making sure that" the defendant's postconviction counsel had "everything," and then to give the defendant's postconviction counsel "60 days *** to make any needed amendments." The defendant's postconviction counsel agreed to this course of action. He subsequently asked to speak

4

with the defendant, and thereafter stated he would "make a formal written request to [the State] for the transcripts whereby [the defendant] was indicted before he went to trial." He added, "I think there may be one other thing that I would be requesting by way of the police report, but I think we have covered this for today." After an additional consultation with the defendant, counsel stated that he would "follow *** up" on what needed to be requested from the State.

¶ 9    On October 27, 2015, the circuit court entered an order that stated that the defendant's postconviction counsel was "to make any necessary amendments to the [p]etition within 30 days." On February 23, 2016, the circuit court entered an order that stated that "[t]he attorneys are reminded to comply with the amendment deadlines." On March 15, 2016, the circuit court entered an order that stated that the defendant's postconviction counsel had appeared and "report[ed] that he will be filing a pleading adopting [the defendant's] arguments as his own within the next fourteen (14) days." The order granted the State 45 days in which to file a motion to dismiss.

¶ 10    On August 9, 2016, postconviction counsel filed a motion "for leave to adopt," in which counsel stated that he believed "rather than attempt to file an individual pleading on behalf of [the defendant]—thereby possibly running the risk of omitting certain arguments—it is in the best interests of justice and judicial economy that counsel be allowed to adopt pleading[s] filed on behalf of [the defendant] as his own, in advance of any hearing." In his prayer for relief in the motion, counsel asked for the circuit court to "enter an [o]rder granting counsel leave to adopt [the defendant's] various post-conviction petitions as his own and allow counsel to file no less than one pleading of his own." On September 29, 2016, a hearing was held. When asked if he was ready to proceed, postconviction counsel apologized to the court, then stated, "I have had about 90 minutes today to confer with [the defendant], and go over some things that in all candor I have a better understanding of now today after talking with him than I did perhaps before. I respectfully request a brief period of time to continue or postpone this hearing so that I might add at least one or two

5

other allegations more properly." He added that this was the defendant's "first post-conviction petition, and there are serious waiver doctrines and rules that apply hereafter." He again apologized to the court, adding, "I know this was set specially for today, but I think I need a little bit more time." He thereafter stated, "I don't think it will be a new motion. I think it will be a way of more concisely stating what [the defendant] has attempted to say over probably 15 to 20 pages *pro se* filings that I think need to be stated more clearly and concisely and summarize really for the court's benefit and for the State's benefit." When asked how much time he needed, counsel mentioned an upcoming murder case he was defending, set for November 7, 2016, then added, "In all candor, it's been absorbing a great deal of my time and attention here for the last six weeks, anyway, and I continue to think about that particular case every day." When asked about this case, postconviction counsel stated, "I think I could get the proper amendments on file within 60 days or less." The circuit court responded, "I will give you 60 days to amend," and thereafter added, "I am going to hold you to that 60 days, though. All right?" Counsel responded, "Yes, sir." Counsel thereafter stated, with regard to what he might file, "I don't think it will be any surprise. It will simply be a better way of summarizing what needs to be said for more judicial economy, if you will."

¶ 11     On October 4, 2016, following the hearing, the circuit court entered a written order in which it noted that the defendant and the defendant's postconviction counsel had requested "thirty days to amend the pleadings." The circuit court ruled that "[o]ver objection of the State, it is hereby ordered that the [a]ttorney for [the defendant] is to make any necessary amendments to the [p]etition within 30 days."[1] The circuit court allowed the State "30 days after that to file any

_____

[1]It is not clear from the record on appeal why the circuit court told postconviction counsel orally that he would be given 60 days to amend, but then entered a written order giving counsel only 30 days to do so. A reasonable inference to draw from this action is that the circuit court, in light of the comments that it would hold counsel to the 60-day deadline, was concerned and frustrated by postconviction counsel's

6

motions." More than nine months later, on July 18, 2017, the circuit court entered an order which stated that a "pre-hearing conference" had been held, and that postconviction counsel "report[ed] that he is awaiting an executed affidavit from [the defendant]" and that counsel needed "to file certificate." The order stated that "[b]oth certificate and affidavit shall be on file within forty-five (45) days." On October 4, 2017, the defendant's affidavit was filed, which related to his purported communication with his appellate counsel during his prior appeal efforts. No certificate was filed. On March 6, 2018, the circuit court set the case for an April 24, 2018, hearing on the State's motion to dismiss.

¶ 12    On April 24, 2018, the hearing was held. The parties presented arguments. The State began by clarifying that it was the June 2, 2014, motion to dismiss upon which it was proceeding. The defendant's postconviction counsel first focused his argument on the defendant's affidavit about the defendant's contact with appellate counsel, arguing that the defendant did not receive the required level of representation from appellate counsel. He also argued that the defendant did not receive the required level of representation from trial counsel during the jury trial in this case, and noted his understanding that the defendant's trial counsel "later lost his law license over things such as conflicts and what have you on how he handled those." He subsequently added, "I think that there are serious issues that could be looked at in this case with the State," as well as "I think that we should be very thorough before we dismiss the case without a third-stage hearing and allow him to testify and allow us to question him about those matters." Postconviction counsel concluded his argument by stating, "I think there are a lot of issues that should have been raised on appeal that weren't. I think that the amount of sentence the defendant received, a re-examination of these issues is very important at this stage, and for those reasons I would urge the court to not dismiss

_____

continuous, and for the most part unexplained, delays in this case.

7

this case at this point." He then added, "If for some reason the court does elect to do so, I respectfully request we be given 30 or so days to try to amend to get these allegations more properly on file."

¶ 13    Counsel for the State responded that, *inter alia*, the defendant had "failed to show even a *prima facie* case of whether or not the appellate counsel was ineffective in this particular case, and therefore there is nothing that would require this case to advance to a third stage hearing." She added that "[t]he request to further amend their complaint at some point, you know, the Post-Conviction Petition Act and the subsequent case law shows there has to be an end point to some of these filings. So in this particular case there is an affidavit, a certificate filed[2] that at some point this just needs to be done. So to further amend the pleadings beyond this date would just drag out what's already been a very long 18-year-old case."

¶ 14    On July 10, 2018, the circuit court entered a written order that granted the State's motion to dismiss the petition. The order began with a "timeline" that stated, incorrectly, that the defendant filed a postconviction petition on January 2, 2008, and that the postconviction petition was "[d]enied" on April 27, 2009. Later in the order, the circuit court stated that the postconviction petition was "dismissed" by order of the circuit court following "several evidentiary hearings." With regard to the petition filed on February 19, 2013, the circuit court wrote that "the [p]etition is a collection of facts, opinions, legal citations and argument" which the circuit court had "gone through *** and searched for cognizable [c]onstitutional claims." The circuit court added "[t]hat it appears that the [p]etition is a restatement of the claims already presented in the previous [p]ost-

---

[2]As noted elsewhere in this order, no Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate was filed in this case in the circuit court. As discussed in detail below, on March 18, 2021, the State requested leave of this court to supplement the record with one that was signed by postconviction counsel on February 4, 2021, nearly three years after the April 24, 2018, hearing at which the State erroneously represented to the circuit court that a certificate had been filed.

8

[c]onviction [p]etition and [a]ppeal" and that "[t]hese issues have been fully litigated and rejected." The order also stated "[t]hat the broad allegations in the [p]etition are not supported or are contradicted by the [a]ffidavits, [e]xhibits, [and] the [record]." The circuit court ruled that the petition did "not make a substantial showing of a constitutional violation," and "[t]hat any issues which could have been raised on appeal, but were not, are procedurally defaulted, and any issues which have previously been decided by a reviewing court are barred by *res judicata*."

¶ 15 On July 30, 2018, the defendant filed, *pro se*, a notice of appeal. The defendant's postconviction counsel did not file a notice of appeal. This timely appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17 On appeal, the defendant asks this court to remand this cause for further second-stage proceedings, contending his postconviction counsel failed to provide a reasonable level of assistance to him because counsel failed to amend the petition to shape his *pro se* claims into appropriate legal form for presentation to the circuit court. In the alternative, he asks this court to advance this cause to a third-stage evidentiary hearing in the circuit court. With regard to his first contention of error, the defendant argued in his opening brief on appeal that postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and provided unreasonable assistance by merely adopting the defendant's *pro se* petition, adding an affidavit from the defendant, and not shaping the petition into proper legal form. The defendant noted that no Rule 651(c) certificate was filed in this case, despite counsel's repeated statements that he would be filing one, and that counsel never amended the petition at all, despite repeated statements that he would do so. He also noted, specifically, that his postconviction counsel did not "amend the petition in order to address the waiver and *res judicata* issues" raised by the State in its motion to dismiss. He contended that "[h]ad post-conviction counsel amended the *** petition to allege that ineffective assistance claims were not waived or barred by *res judicata* because [the

9

defendant] had argued that appellate counsel had failed to raise these claims on direct appeal, they would not have been barred." He posited that to defeat the State's arguments, his "post-conviction counsel could have highlighted what was available on the record regarding the immunity issue and compared it to what actually was raised on direct appeal" by appellate counsel. With regard to his alternative argument—that he was entitled to a third-stage evidentiary hearing because, the failures of his postconviction counsel notwithstanding, he had made a substantial showing of a violation of his constitutional rights—he contended, *inter alia*, that the issue of the purported granting of immunity to the defendant "was a complex issue that needs additional evidence where the issue of immunity affects [the defendant's] claims of ineffective assistance of trial and appellate counsels and prosecutorial misconduct." He added that the issue of his purported "immunity was absolutely material to his case and critical to whether he could even be charged with Warr's murder, where there was no doubt that [Robert] Fletcher was the actual shooter" in this case. Finally, the defendant requested that "due to the significant amount of time that [the defendant's] petition had been pending before the trial court," we, in the disposition of this appeal, "urge the circuit court and the parties to avoid any further unwarranted or unnecessary protraction of the process, upon remand."

¶ 18    Subsequent to the defendant's filing of his opening brief on appeal, and contemporaneously with the filing of its own brief on appeal, on March 18, 2021, the State filed a motion to supplement the record on appeal with a Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) certificate signed by the defendant's postconviction counsel on February 4, 2021. In its motion, the State argued that this court should allow the State to supplement the record on appeal with the certificate because the defendant's opening brief on appeal "note[d] the omission of the Rule 651(c) certificate and argue[d] that the present record on appeal does not prove that counsel met his Rule 651(c) obligations," and that the certificate "corrects this omission and proves that counsel performed as required by Rule 651(c)." The certificate, which was included by the State with its motion, states

10

that the defendant's postconviction counsel certified "pursuant to Supreme Court Rule 651(c)" that he had (1) "consulted with the [d]efendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of deprivation of constitutional rights"; (2) "examined the trial court file, the record of the proceedings at the trial or the plea of guilty and the report of proceedings at the sentencing hearing"; and (3) "made any amendments to the petition filed *pro se* that are necessary for adequate presentation of [the] petitioner's contentions."

¶ 19      In its contemporaneously-filed brief on appeal, the State reiterated the points made in its motion, and expanded upon them, noting, *inter alia*, Illinois precedent that stands for the proposition that "[t]he filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance in compliance with the rule," and positing that, in light of its proposed supplement to the record on appeal, the defendant had not rebutted that presumption in this case. The State noted, however, that its argument on appeal was that the supplemented record demonstrated "counsel's compliance with the rule, not that counsel's compliance is shown elsewhere in the existing record." In response to the defendant's alternative argument, the State provided extensive argument as to why it believed the defendant was not entitled to a third-stage evidentiary hearing in this case. The State concluded this portion of its brief by contending that the defendant's *pro se* "claims failed to make a substantial showing of a constitutional violation," which the State posited meant that this court "should affirm the dismissal of [the] petition."

¶ 20      On March 22, 2021, the defendant filed an objection to the State's motion to supplement, arguing that the certificate was filed more than two years after the defendant filed his notice of appeal in this case, and was "contradicted by the record," which showed that counsel did not in fact comply with the requirements of Rule 651(c). On March 24, 2021, the State requested leave to respond to the defendant's objection to the State's motion to supplement the record. On March

11

26, 2021, this court entered an order in which we stated that, *inter alia*, "[t]he State's motion to supplement the record, [the] defendant's objection thereto, and the State's motion for leave to file response to [the] defendant's objection" would be taken with the case and dispensed with in this order.

¶ 21   On April 29, 2021, the defendant filed his reply brief. He reiterated his objection to the State's request to supplement the record on appeal with postconviction counsel's "belated" certificate, and argued that even if the record were to be supplemented as requested by the State, the record would still, as a whole, rebut any presumption that might arise as to postconviction counsel's compliance with Rule 651(c) in this case. He also provided extensive argument with regard to his alternative argument.

¶ 22   On May 19, 2021, we ordered the parties to file additional briefs addressing (1) whether, pursuant to *People v. Yaworski*, 2014 IL App (2d) 130327 (as well as other decisions the parties deemed to be relevant), it was appropriate for postconviction counsel in this case to serve as postconviction counsel, in light of the fact that he also represented the defendant in the trial court as posttrial counsel, and in light of the fact that the petition alleged ineffective assistance of trial counsel and appellate counsel, which required him, as postconviction counsel, to scrutinize his own performance as posttrial counsel when attempting to determine whether amendments to the petition were necessary to shape the defendant's ineffective assistance of trial counsel and appellate counsel arguments into appropriate legal form; and (2) if error occurred, the proper remedy in this case. In our order, we noted that in *Yaworski*, this court held, *inter alia*, that it was not proper for the circuit court to appoint, as postconviction counsel on a *pro se* petition that included a claim of ineffective assistance of trial counsel, the same attorney who served as counsel at trial. See 2014 IL App (2d) 130327, ¶¶ 1, 4-16. We added that in *Yaworski*, we specifically noted that " '[p]recisely what shape [the] defendant's petition might have taken if an attorney other

12

than [trial counsel] had represented defendant in the post[-]conviction proceedings is a matter of conjecture,' " and " '[w]e decline[d] to speculate whether [post-conviction counsel] failed to amend the petition because there was no good-faith basis for arguing his own incompetence or, conversely, because there *was* a good-faith basis for doing so but [counsel] was inhibited by self-interest.' " (Emphasis in original.) See *id.* ¶ 14. We noted that the record and briefs on appeal in this case indicated that the defendant's postconviction counsel also served as posttrial counsel for the defendant from approximately 2003 until 2009, prior to the filing of the petition, including with regard to allegations of ineffective assistance of trial counsel made by the defendant shortly after his trial. We further noted that we were aware of nothing in the record on appeal indicating that the defendant waived or purported to waive his right to conflict-free counsel with regard to his postconviction counsel.

¶ 23    On May 26, 2021, the defendant filed a supplemental brief in which he contended that, in light of, *inter alia*, the supplemental facts identified in his brief with regard to postconviction counsel's prior representation of the defendant—for longer than five years—as posttrial counsel, it was not appropriate for counsel later to serve as postconviction counsel as well. He noted that the Illinois Supreme Court ruled, in *People v. Hardin*, 217 Ill. 2d 289, 300 (2005), that, in terms of a defendant's right to conflict-free representation, postconviction counsel must be as conflict-free as trial counsel, notwithstanding the statutory, rather than constitutional, source of the right to postconviction counsel. He contended that postconviction counsel in this case "should have recognized that the petition's allegations calling into question [the defendant's] trial and appellate counsels' performances presented a conflict preventing his continued involvement in th[is] matter" because he was, in fact, counsel for the defendant for posttrial matters.

¶ 24    The defendant noted that the record on appeal in this case demonstrates that postconviction counsel's "entire representation of [the defendant] during the post-trial stage was to assist in [the

defendant's *pro se*] claims of ineffective assistance of [trial counsel]." He further noted that, as posttrial counsel, postconviction counsel "was in the unique position to create a record of [trial counsel's] ineffectiveness for appellate review," and that accordingly, postconviction counsel's representation of the defendant as his posttrial counsel necessitated "both arguing [trial counsel's] ineffectiveness" to the circuit court in furtherance of the defendant's *pro se* posttrial motion and "creating an adequate record for appellate review of [trial counsel's] ineffectiveness." According to the defendant, because the petition alleged ineffective assistance of both trial counsel and appellate counsel, and because postconviction counsel had previously served, as posttrial counsel, as a nexus between trial counsel and appellate counsel, essentially charged with both arguing trial counsel's ineffectiveness and creating an adequate record for appellate counsel to effectively argue trial counsel's ineffectiveness on appeal, postconviction counsel was, in his new role, necessarily required to scrutinize his own prior conduct in the case as posttrial counsel. The defendant contended that this put postconviction counsel "in the impossible position of arguing his own ineffectiveness had he amended [the defendant's] petition and properly alleged [the defendant's *pro se*] claims."

¶ 25    With regard to the appropriate remedy in this case, the defendant's supplemental brief pointed to the language from *Yaworski* that we quoted in our order requiring supplemental briefing, described above, and asked this court to do as the *Yaworski* court did: vacate the dismissal of the petition and remand for further second-stage proceedings with new, conflict-free counsel. After noting the *Yaworski* court's concern that self-interest might prevent an attorney who labored under a conflict of interest from making necessary and appropriate amendments to a petition (see *Yaworski*, 2014 IL App (2d) 130327, ¶ 14), the defendant reiterated many of the irregularities of postconviction counsel's representation of the defendant in this case—both as posttrial counsel and as postconviction counsel—many of which are analyzed by this court in detail below. The

14

defendant also pointed out that at the April 24, 2018, hearing on the State's motion to dismiss the petition, postconviction counsel, when discussing the ineffective assistance of appellate counsel claims raised by the defendant in the petition, made reference to his own prior representation of the defendant as posttrial counsel, stating to the circuit court, "we had a fairly thorough hearing on the effective assistance of [trial] counsel issue. [The defendant] testified, and again, Your Honor, for those matters to have been glossed over the way they were on appeal, in my opinion, I don't think this is what the Sixth Amendment contemplates." In his supplemental brief, the defendant thereafter contended that another failing of postconviction counsel, in his earlier role as posttrial counsel, was that "the immunity issue *** was 'glossed' over during the post-trial motion hearings *** because the focus was on [trial counsel's] representation."

¶ 26     On June 2, 2021, the State filed its supplemental brief, in which it contended that in this case, postconviction counsel had neither a *per se* conflict of interest nor an actual conflict of interest. With regard to the latter, the State contended that the defendant had not met the "burden of identifying a specific defect in [counsel's] post-conviction strategy that is attributable to the alleged conflict" of interest in this case. According to the State, pursuant to the recent decision of the Illinois Supreme Court in *People v. Custer*, 2019 IL 123339, the "[d]efendant's remedy for this alleged failing remains his claim of counsel's noncompliance with Rule 651(c)." Thus, the State posited, if this court were to accept the proposed Rule 651(c) certificate, any conflict of interest problems would be resolved by that certificate. For this contention, the State relied upon its earlier assertion, in its first brief on appeal, that the defendant had not rebutted the presumption of reasonable assistance raised by the proposed filing of the certificate. The State noted, however, that if this court were to find that it was not permissible for postconviction counsel to serve in that role in this case, the appropriate remedy would be to remand for further second-stage proceedings with new counsel.

15

¶ 27    On June 7, 2021, the defendant filed his supplemental reply brief, in which he contended that (1) the State, in its supplemental brief, was overly dismissive of the *Yaworski* court's holding, as well as the reasoning upon which the holding was based, and inaccurately posited that recent Illinois Supreme Court precedent called into question the reasoning underpinning *Yaworski*; (2) pursuant to *Yaworski*, postconviction counsel in this case labored under an impermissible "inherent" conflict of interest; (3) because postconviction counsel labored under an impermissible inherent conflict of interest, he also labored under a *per se* conflict of interest; and (4) postconviction counsel also labored under an actual conflict of interest, because counsel "as post-trial counsel for over five years, was tasked with creating a record of [the defendant's] *pro se* claims of ineffective assistance against his trial attorney," but failed to do so either as posttrial counsel or as postconviction counsel. The defendant also, *inter alia*, reiterated his arguments as to the ways in which he believed postconviction counsel failed to provide the defendant with reasonable assistance, notwithstanding any conflict of interest, and notwithstanding counsel's belated filing of a Rule 651(c) certificate.

¶ 28    In addition to the briefs and supplemental briefs, described extensively above, we have considered thoroughly the three filings—the State's motion to supplement the record, the defendant's objection thereto, and the State's motion for leave to file a response to the defendant's objection—that were taken with this case. In light of the protracted proceedings in the circuit court—both on the defendant's posttrial motion and on the petition—we agree with the parties that at the heart of this case is the question of whether the defendant received the reasonable assistance of postconviction counsel. For the reasons that follow, we conclude that even if we assume, *arguendo*, that the State is correct that postconviction counsel's representation of the defendant in this case was conflict-free, and therefore was permissible, and even if we further assume, *arguendo*, that it was proper for the State to seek to supplement the record with a Rule 651(c)

16

certificate that was filed nearly three years after postconviction counsel's last on-the-record representation of the defendant in the circuit court, and that therefore the certificate is properly before us, the defendant nevertheless is correct that the record on appeal rebuts the belated contention from postconviction counsel that he substantially complied with Rule 651(c). Accordingly, we hereby deny, as moot, the State's motion to supplement the record.

¶ 29    As the defendant points out, at the first stage of postconviction proceedings, the circuit court reviews the petition independently and determines whether the petition is frivolous or patently without merit. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 27. If the petition clears that hurdle, it advances to the second stage, at which point the defendant has the right to counsel. *Id.* Counsel may file an amended petition, and the State may file a motion to dismiss or an answer. *Id.* If the petition makes a substantial showing of a constitutional violation, it will be advanced to the third stage, which ordinarily involves an evidentiary hearing on the defendant's claims. *Id.*

¶ 30    The source of the defendant's right to counsel at the second stage of proceedings is statutory rather than constitutional, and as a result, the level of assistance guaranteed is not the same as the level of assistance constitutionally mandated at trial or on direct appeal; instead, the level of assistance required is reasonable assistance. *Id.* ¶ 29. To provide reasonable assistance, postconviction counsel is required to perform the three duties set forth in Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). *Id.* ¶ 30. Counsel must (1) consult with the defendant to determine the claims the defendant wants to raise, (2) examine the appropriate portions of the record, and (3) make any amendments to the petition that are necessary in order to adequately present the defendant's claims to the circuit court. *Id.* Counsel is not required to file an amended petition in every case—only in those in which amendments are necessary to adequately present the defendant's claims. *Id.* Counsel may choose to stand on the defendant's unamended petition if it

17

adequately presents the defendant's claims. *Id.* Moreover, counsel is under no obligation to amend a petition to advance claims that lack merit. *Id.*

¶ 31    The filing, by postconviction counsel, of a certificate of compliance with Rule 651(c) creates a rebuttable presumption that counsel has provided the statutorily-required reasonable level of assistance. *Id.* ¶ 31. We review *de novo* the question of whether counsel provided the reasonable level of assistance required. *Id.* If we determine that postconviction counsel failed to provide reasonable assistance, we will remand for further proceedings on the petition, with new counsel to be appointed to represent the defendant on remand. *Id.* ¶ 53. If new counsel investigates the claims raised by the defendant and concludes that they are frivolous and patently without merit, despite the circuit court's initial finding to the contrary, new counsel must file a motion to withdraw that comports with the requirements spelled out by the Illinois Supreme Court in *People v. Kuehner*, 2015 IL 117695. *Id.*

¶ 32    As we undertake our *de novo* review of whether postconviction counsel provided reasonable assistance, we are mindful of the fact that substantial compliance with Rule 651(c) is sufficient. See, *e.g.*, *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. We also are mindful of the fact that the presumption of reasonable assistance that arises with the filing of a Rule 651(c) certificate may be rebutted by the record. *People v. Russell*, 2016 IL App (3d) 140386, ¶ 10. The failure to make a routine amendment, such as an amendment adding a claim of ineffective assistance of appellate counsel in order to prevent the dismissal of a petition on the basis of waiver, is an example of conduct on the part of postconviction counsel that rebuts the presumption of reasonable assistance. *Id.* ¶ 11. Moreover, there is no requirement that a defendant make a positive showing that counsel's failure to comply with Rule 651(c) caused prejudice, because if postconviction counsel failed to fulfill the duties of Rule 651(c), remand is required, regardless of whether the claims raised by the defendant in the petition had merit. *Id.* ¶ 12. Likewise, counsel's

18

failure to comply with the rule will not be excused on the basis of harmless error, because a reviewing court will not engage in speculation as to whether the circuit court would have dismissed the petition at the second stage had counsel complied with the rule. *Id.*

¶ 33    As we consider whether postconviction counsel provided reasonable assistance, we also are mindful of the fact that the purpose of Rule 651(c) is to ensure that postconviction counsel shapes the defendant's *pro se* claims into appropriate legal form and thereafter presents those claims to the circuit court. *People v. Jones*, 2016 IL App (3d) 140094, ¶ 28. To effectuate that purpose, Rule 651(c) requires a showing that postconviction counsel took whatever steps were necessary to secure the adequate representation of the defendant's claims. *Id.* We are guided by the proposition that if postconviction counsel does not adequately complete the duties mandated by Rule 651(c), the statutory right to reasonable assistance cannot be fully realized. *Id.* With regard to the duty to amend, the failure to provide reasonable assistance as to this duty may, under certain circumstances, rise to the level of an impermissible "total failure of representation" that amounts to postconviction counsel representing a defendant "in name only." *People v. Turner*, 187 Ill. 2d 406, 415 (1999). With regard to harmless error, in *Turner*, the Illinois Supreme Court reiterated that if a reviewing court determines that "counsel essentially did nothing to shape the [*pro se*] claims into the appropriate legal form," the defendant "must be given an opportunity to replead [the defendant's] post-conviction petition with the benefit of reasonable assistance of counsel." *Id.* at 416-17. To not afford the defendant this opportunity on remand with new counsel is essentially to "render the appointment of counsel in post-conviction proceedings nothing but 'an empty formality.' " *Id.* at 417 (quoting *People v. Garrison*, 43 Ill. 2d 121, 123 (1969)).

¶ 34    As we turn to this case, we are mindful as well of the holding of our colleagues in the First District, in *Profit*, 2012 IL App (1st) 101307, ¶¶ 19, 29-30, that one of the ways by which a defendant may meet the defendant's burden to rebut the presumption created by the filing of a

Rule 651(c) certificate—and therefore may show that the defendant did not receive reasonable assistance of counsel because counsel failed to substantially comply with the rule, by failing to make necessary amendments to the *pro se* petition—is to identify the amendments that should have been made to the petition by counsel, but were not made. However, we do not believe that *Profit* stands for the proposition—as the State insinuates in its briefs on appeal—that this is the *only* way by which a defendant may rebut the aforementioned presumption. See, *e.g.*, *People v. Kirk*, 2012 IL App (1st) 101606, ¶¶ 33-36 (noting that *Profit* was factually distinguishable, and did not preclude a finding for other reasons—including on the basis of postconviction counsel's on-the-record conduct—that the defendant had met his burden to rebut the presumption of compliance with Rule 651(c)).

¶ 35     In this case, following a thorough *de novo* review of the record on appeal, we conclude, for the following reasons, that notwithstanding postconviction counsel's belated Rule 651(c) certificate of compliance, his on-the-record conduct clearly rebuts the presumption created by that certificate that he substantially complied with the rule and provided the statutorily-required reasonable level of assistance. We reiterate that the petition was 125 handwritten pages long and included extensive quotations from transcripts in the record on appeal and extensive citation to case law, and that it raised multiple claims of, *inter alia*, ineffective assistance of trial counsel and of appellate counsel, as well as prosecutorial misconduct with regard to the circumstances surrounding a purported granting of immunity to the defendant. Moreover, the petition was accompanied by approximately 160 pages of exhibits, comprised of the transcripts referenced above and other relevant documents, including an affidavit from the defendant.

¶ 36     As described in extensive detail above, postconviction counsel repeatedly—over a period of years—requested additional time to attempt to determine whether amendment of the petition was required. However, even when the circuit court provided generous extensions of time for

postconviction counsel to "focus" himself so that he could better understand the petition and how it should be handled, counsel repeatedly failed to act within the deadlines created by the court. The State asks us to overlook counsel's pattern of conduct, contending that, ultimately, counsel made the studied decision that no amendments to the petition were required, and that he could substantially comply with the rule and provide reasonable assistance to the defendant by resting on what the defendant filed *pro se*. The State's argument would be more persuasive if there was evidence in the record to support it. There is not. Instead of evidence that after much contemplation—years of contemplation, in fact—postconviction counsel came to the reasoned conclusion that the petition was in appropriate legal form just as it was and required no amendment, the record shows that no such reasoned decision was made by counsel.

¶ 37 As explained above, at the April 24, 2018, hearing on the State's motion to dismiss—which was held more than five years after he was appointed to represent the defendant as counsel on the defendant's February 19, 2013, *pro se* postconviction claims—counsel made his final pronouncement in the circuit court as to whether he believed amendment was required: he stated that if, after hearing counsel's argument, the circuit court believed the petition should be dismissed, rather than advanced to third-stage proceedings, he would like to "be given 30 or so days to try to amend to get these allegations more properly on file."[3] We see no reasonable way to interpret this request other than as a concession by postconviction counsel that—his belated Rule 651(c) certificate, filed with this court nearly three years later, notwithstanding—he could not state with

---

[3]The State suggests that moments later, postconviction counsel stated that he would stand on the defendant's *pro se* petition. The State asks us to interpret this as counsel's realization that no amendments were necessary. However, what counsel actually stated was, "I think I would stand on the things that I have said a few moments ago, along with [the defendant's] filings, I'll ask the matter proceed to a third stage." We decline to ignore the fact that one of the things he stated "a few moments ago" was that he desired more time to amend the petition to "properly" get it on file, and that counsel did not state, at any point thereafter, that he now believed amendments were not necessary.

21

the quantum of confidence required by Rule 651(c) that he had made all required amendments to the petition. The fact that he did not file a certificate in the circuit court supports this interpretation.

¶ 38 Moreover, although the State attempts to minimize counsel's conduct by contending that counsel earlier stated he did not think he would file an amended petition, but would instead file some kind of summary simply for the sake of judicial economy, when we look at the language actually used by postconviction counsel at the September 29, 2016, hearing—"I don't think it will be a new motion. I think it will be a way of more concisely stating what [the defendant] has attempted to say over probably 15 to 20 pages *pro se* filings *that I think need to be stated more clearly and concisely and summarize really for the court's benefit* and for the State's benefit" (emphasis added)—we see no reasonable way to interpret this statement other than as a concession by postconviction counsel that he did not believe that the petition, in its present *pro se* form (which, we note, is the same form the petition remains in, more than 4½ years later), was in appropriate legal form and was ready for presentation to the court for disposition. In fact, the comments pointed to by the State are part of a consistent—indeed, near-constant—pattern by postconviction counsel, throughout the proceedings in the circuit court, including up to and through the April 24, 2018, hearing on the State's motion to dismiss, of asserting that additional time, and subsequent work on the petition, was required before the petition would be in appropriate legal form for presentation to the circuit court.

¶ 39 Furthermore, although counsel repeatedly asked for additional time to try to understand the nature and scope of the petition, and how the petition should be handled by him in his role as appointed counsel who owed a duty of reasonable assistance to the defendant, we cannot, on the record before us, conclude that he ever achieved such an understanding. We note, for example, that prior to the September 29, 2016, hearing just discussed, on August 9, 2016, the defendant's postconviction counsel filed a motion "for leave to adopt," in which counsel stated that he believed

22

"rather than attempt to file an individual pleading on behalf of [the defendant]—*thereby possibly running the risk of omitting certain arguments*—it is in the best interests of justice and judicial economy that counsel be allowed to adopt pleading[s] filed on behalf of [the defendant] as his own, in advance of any hearing." (Emphasis added.) In his prayer for relief in the motion, counsel asked for the circuit court to "enter an [o]rder granting counsel leave to adopt [the defendant's] various post-conviction petitions as his own and allow counsel to file no less than one pleading of his own."

¶ 40    We see no reasonable way to interpret these statements other than as concessions by postconviction counsel that his understanding of the contents of the petition and the other documents filed by the defendant was so poor that he believed that if he amended the defendant's *pro se* pleadings, rather than adopting them as-is, he might inadvertently omit "certain arguments." As explained above, counsel is under no obligation to amend a petition to advance claims that lack merit. See, *e.g.*, *Wallace*, 2018 IL App (5th) 140385, ¶ 30. Accordingly, the only reasonable way to interpret postconviction counsel's statement that he was afraid he would leave out "certain arguments" if he filed an amended petition is to presume that either (1) postconviction counsel believed *all* of the defendant's arguments were meritorious (because, of course, he would have no reason to fear omitting nonmeritorious claims) but nevertheless believed that, for unspecified reasons, he lacked the ability to amend the petition without leaving out things that needed to be included, or (2) he did not understand the defendant's pleadings well enough to ascertain which claims, if any, were meritorious, and which therefore must not be omitted for fear of rendering his assistance to the defendant unreasonable. Neither reading of postconviction counsel's statement inspires confidence in this court that postconviction counsel understood the defendant's contentions. We believe it is self-evident, in light of the requirements of Rule 651(c), that substantial compliance with the rule, and reasonable assistance to a defendant, require, at the very

23

least, that postconviction counsel understand the nature and scope of the defendant's claims, because such an understanding is clearly a prerequisite to a reasoned assessment of whether the *pro se* petition requires amendment.

¶ 41 We also note that at the September 29, 2016, hearing, prior to making the statements pointed to by the State and discussed above, postconviction counsel apologized to the court, then stated, "I have had about 90 minutes today to confer with [the defendant], and go over some things that in all candor I have a better understanding of now today after talking with him than I did perhaps before. I respectfully request a brief period of time to continue or postpone this hearing so that I might *add* at least one or two other allegations more properly." (Emphasis added.) Postconviction counsel's statement that based upon his new understanding of the defendant's *pro se* contentions, he might need to *add* allegations contradicts his subsequent statement, made just minutes later, that rather than filing "a new motion," he would probably just summarize for clarity and judicial economy, and only adds to our conclusion, based upon the record before us, that postconviction counsel never understood the nature and scope of the defendant's *pro se* claims well enough to assess whether the petition required amendment. Thus, we agree with the defendant that the record on appeal rebuts the belated contention from the defendant's postconviction counsel that he substantially complied with Rule 651(c).

¶ 42 The confusion sown by postconviction counsel's failure to provide reasonable assistance to the defendant is also evidenced in the order on appeal, in which the circuit court stated, *inter alia*, that after it had "gone through" the petition in an effort to find "cognizable [c]onstitutional claims," the court's conclusion was that "it *appears* that the [p]etition is a restatement of the claims already presented" that had "been fully litigated and rejected." (Emphasis added.) The fact that the circuit court could not state with certainty what the claims in the petition were, but could state only what they *appeared* to be, further supports our conclusion that, despite

24

the appointment of counsel to assist the defendant—and despite counsel having more than five years to provide that assistance—absolutely no effort was made by counsel to shape the defendant's contentions into appropriate legal form for presentation to the circuit court, despite postconviction counsel's repeated statements, as late as the April 24, 2018, hearing, that the petition required further scrutiny and should advance to a third-stage evidentiary hearing.

¶ 43    On a related note, we find it necessary to briefly address the State's suggestion, in its briefs on appeal, that perhaps postconviction counsel chose not to amend the petition because—notwithstanding the circuit court's initial finding that the petition was not frivolous and patently without merit, and that therefore counsel must be appointed to represent the defendant—postconviction counsel nevertheless later independently determined that the petition was frivolous and lacked merit. There is no support in the record on appeal for this suggestion. To the contrary, as noted immediately above, as late as the April 24, 2018, hearing on the State's motion to dismiss, postconviction counsel—his failure to provide reasonable assistance to the defendant notwithstanding—continued to argue that the petition required further scrutiny and should advance to a third-stage evidentiary hearing. His statements in support of that position at the hearing included the following: "I think that there are serious issues that could be looked at in this case with the State," as well as "I think that we should be very thorough before we dismiss the case without a third-stage hearing and allow him to testify and allow us to question him about those matters." Moreover, he concluded his argument by stating, "I think there are a lot of issues that should have been raised on appeal that weren't. I think that the amount of sentence the defendant received, a re-examination of these issues is very important at this stage, and for those reasons I would urge the court to not dismiss this case at this point." We therefore find patently unpersuasive the State's suggestion that postconviction counsel at some point decided that the petition lacked merit, and for that reason chose not to amend it. The State also suggests that postconviction

counsel's subjective belief as to whether amendments were required should be irrelevant to our analysis of whether the presumption created by counsel's Rule 651(c) certificate is rebutted by the record. However, we believe such a rule would be inherently illogical. We are aware of no precedent, or pattern of practice among postconviction attorneys, that suggests that prior to signing a Rule 651(c) certificate, counsel must seek objective verification, from outside sources, of counsel's belief that the certificate can be executed in good faith. To the contrary, the presumption of compliance created by a Rule 651(c) certificate necessarily must be derived from postconviction counsel's good faith, *subjective* belief, at the time counsel signs the certificate, that no amendments are necessary; to take into consideration postconviction counsel's subjective beliefs for purposes of creating a presumption of compliance, but then to disregard counsel's subjective beliefs for purposes of determining whether the presumption is rebutted, would be fundamentally unfair to defendants, and contrary to logic. If counsel's subjective beliefs are sufficiently reliable to form the basis for a presumption of compliance with Rule 651(c), they also must be deemed reliable enough to provide the means, in cases such as this one, to rebut that presumption.

¶ 44     We turn next to the question of the appropriate remedy in this case. The State urges this court—without regard to any shortcomings we might find in the performance of postconviction counsel that are so severe as to render his assistance unreasonable—to find other grounds to affirm the dismissal of the petition. However, as explained above, if postconviction counsel fails to fulfill the duties of Rule 651(c), remand is required, regardless of whether the claims raised by the defendant in the petition had merit. See, *e.g.*, *Russell*, 2016 IL App (3d) 140386, ¶ 12. Likewise, counsel's failure to comply with the rule will not be excused on the basis of harmless error, because a reviewing court will not engage in speculation as to whether the circuit court would have dismissed the petition at the second stage had counsel complied with the rule. *Id.* Moreover, also as explained above, the Illinois Supreme Court has held that if a reviewing court determines that

26

"counsel essentially did nothing to shape the [*pro se*] claims into the appropriate legal form," the defendant "must be given an opportunity to replead [the defendant's] post-conviction petition with the benefit of reasonable assistance of counsel." *Turner*, 187 Ill. 2d at 416-17. To not afford the defendant this opportunity on remand with new counsel is essentially to "render the appointment of counsel in post-conviction proceedings nothing but 'an empty formality.' " *Id.* at 417 (quoting *Garrison*, 43 Ill. 2d at 123). We note as well that to allow the State to attack the petition on other grounds on appeal would be, in essence, to allow the State to attack a petition that has not had the benefit of the reasonable assistance of counsel at the circuit court level, despite the fact that the circuit court found that the petition was not frivolous and patently without merit, and therefore appointed counsel to represent the defendant, rather than dismissing the petition at the first stage of proceedings without affording the defendant the benefit of counsel. Accordingly, we do not agree with the State that under circumstances such as those presented in this case, it would be appropriate to search for other grounds upon which to affirm the dismissal of the petition.

¶ 45    We find the defendant's request that "due to the significant amount of time" the petition has been pending, this court "urge the circuit court and the parties to avoid any further unwarranted or unnecessary protraction of the process, upon remand" to be well-taken. To date, the representation of the defendant by postconviction counsel has been riddled with inadequacies and irregularities. Although we take no position on the merits of the petition, we urge the circuit court and the parties to remain mindful of the defendant's right to reasonable assistance of counsel on the petition as this matter moves forward on remand.

¶ 46                                III. CONCLUSION

¶ 47    For the foregoing reasons, we reverse the order of the circuit court of Madison County that dismissed the defendant's *pro se* postconviction petition, and we remand for further second-stage proceedings with new counsel.

¶ 48    Reversed; cause remanded for further second-stage proceedings with new counsel.